## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
|  | ) |  |
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELADON GROUP, INC., *et al.*,[1] | ) | Case No. 19-12606 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Related Docket No. 11** |

### INTERIM ORDER PURSUANT TO
### 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, AND 507
### (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED
### SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND
### SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE
### PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE
### OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY;
### (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2),

364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as

amended, the "Bankruptcy Rules"), and Rules 4001-2 of the Local Bankruptcy Rules (the "Local

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Rules") for the United States Bankruptcy Court for the District of Delaware (this "Court"), *inter alia*, requesting, among other things:

(1)     authorization for the Debtors to obtain up to an aggregate principal amount not to exceed $9.050 million (the "DIP Commitment"), which amount, for the avoidance of doubt, includes the Comdata DIP Payment (as defined below) in the amount of $1.050 million in senior secured postpetition financing on a superpriority basis (the "DIP Facility") pursuant to (and in accordance with the terms of) that certain *Debtor-In-Possession Secured Multi-Draw Term Promissory Note*, by and among the Celadon Group, Inc., as the borrower, Blue Torch Finance LLC ("Blue Torch"), as agent (in such capacity, the "DIP Agent"), and the lenders party thereto from time to time (the "DIP Lenders," and, together with the DIP Agent, the "DIP Secured Parties"), on the terms and conditions substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Loan Agreement", and the DIP Loan Agreement, collectively with any other related agreements, including but not limited to that certain Guaranty, dated as of the Closing Date, by each of the guarantors named therein, in favor of the DIP Agent for the benefit of itself, each DIP Lender, and each other holder of an Obligation under the DIP Loan Agreement, substantially in the form attached hereto as **Exhibit B**, and any other documents, security agreements, or pledge agreements, including the Interim Order and the Final Order, collectively, the "DIP Loan Documents"), which DIP Facility shall be available as term loans (the "DIP Loans") to the Borrower and the other Debtors upon entry of this interim order (the "Interim Order") and satisfaction of the other conditions set forth in the DIP Loan Documents in the amount of up to $9.050 million (inclusive of the previously funded Comdata DIP Payment), of which $7.6 million will be funded upon the closing of the DIP Facility (the "Initial DIP Loan");

(2)     authorization for the Borrower and the other Debtors to enter into the DIP Loan Agreement and the other DIP Loan Documents and to take such other and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Secured Parties pursuant to the DIP Loan Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the DIP Secured Parties (including the reasonable and documented fees and expenses of each of the DIP Secured Parties' attorneys, advisors, accountants and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, including, without limitation, any and all obligations in connection with any interest rate, currency swap, or other hedging agreement or arrangement, in each case, to the extent constituting obligations of any kind under the DIP Loan Documents (such obligations, the "DIP Obligations") subject to the terms of this Interim Order;

(4)     authorization for the Debtors, immediately upon entry of this Interim Order, to use proceeds of the Initial DIP Loan as expressly provided in the DIP Loan Documents and solely in accordance with this Interim Order and the applicable Approved Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) to: (A) pay costs, premiums, fees, and expenses incurred to administer or related to the above-captioned cases (collectively, the "Cases") or in connection with the DIP Facility; and (B) provide financing for working capital and for other general corporate purposes of the Debtors in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents);

(5)     granting and approving superpriority administrative expense claim status, pursuant

3

to sections 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, in respect of all DIP Obligations, subject to the Carve-Out (as defined below) and liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition ABL Liens or the Prepetition Term Loan Liens, as applicable, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date (including any such liens that were perfected after the Petition Date but relate back to the Petition Date pursuant to section 546 of the Bankruptcy Code; the "Permitted Liens")[3];

(6)      granting the DIP Secured Parties valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as that term is defined in section 363(a) of the Bankruptcy Code and defined below), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein;

(7)      authorizing the Debtors to use, among other things, solely in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) and the limitations provided herein, any Cash Collateral in which any of the Prepetition Secured Parties (as defined below) may have an interest, and granting adequate protection to the Prepetition Secured Parties solely to the extent of any postpetition diminution in the value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral,

---

[3]      For the avoidance of doubt, "Permitted Liens" shall include the equipment subject to the leases in favor of all equipment lessors, including but not limited to, PNC Equipment Finance, LLC ("PNCEF" and together with PNC Bank National Association, "PNC"), Bridge Capital Inc., Mercedes Benz Leasing, and Bank of America Capital Leasing, and any valid liens and valid setoff rights of any such equipment lessor against the Debtors.

including without limitation, the Cash Collateral, as a result of (i) the incurrence of the DIP Obligations, (ii) the Debtors' use of Cash Collateral as set forth in this Interim Order, (iii) the subordination of the obligations of the Prepetition Secured Parties to the Carve-Out (but, with respect to the Prepetition ABL Secured Parties, solely to the extent of the amount of the Carve-Out that can be satisfied with Available Cash Collateral (as defined below) previously remitted to the Debtors in accordance with Section 3.2(c) of this Interim Order or with funds in the Carve-Out Reserve), (iv) any other diminution in value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (v) the priming of the Prepetition Liens of the Prepetition Term Loan Secured Parties to the extent set forth herein, and (vi) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "Diminution in Value");

(8)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents to the extent hereinafter set forth;

(9)    waiving the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and, subject to entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order"), (a) the Prepetition Collateral, and (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(10)    this Court waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order;

(11)    scheduling a final hearing on the Motion (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(12)    granting the Debtors such other and further relief as is just and proper.

The interim hearing on the Motion having been held by this Court on December 10, 2019 (the "Interim Hearing"), and upon the record made by the Debtors at the Interim Hearing, including the Motion and the First Day Declaration; any exhibits in connection with the foregoing, and the filings and pleadings in these Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of certain of the Debtors' businesses, and the preservation of the value of the Debtors' Estates; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "Notice") having been given under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) Schulte Roth & Zabel LLP, counsel to Blue Torch Finance, LLC; (vii) Landis Rath & Cobb LLP, local counsel to Blue Torch Finance, LLC; (viii) King & Spalding LLP, counsel to Luminus Energy Partners

6

Master Fund, Ltd.; (ix) Chipman Brown Cicero & Cole, LLP,  counsel to Luminus Energy Partners

Master Fund, Ltd.; (x) Goldberg Kohn Ltd., counsel to MidCap Funding IV Trust; (xi) Morris,

Nichols, Arsht & Tunnell LLP, as local counsel to MidCap Funding IV Trust; (xii) Bone,

McAllester, Norton PLLC, as counsel to Comdata, Inc.; (xiii) any party that has requested notice

pursuant to Bankruptcy Rule 2002; and (xiv) any other party in interest entitled to notice of this

Motion (collectively, the "Notice Parties"); and no other notice need be provided; and all

objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or

overruled by the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    Petition Date.  On December 8, 2019 (the "Petition Date"), each Debtor filed a

voluntary petition (each, a "Petition") under chapter 11 of the Bankruptcy Code.  The Debtors

continue to manage their business and properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been

appointed in any of the Cases.

B.    Jurisdiction and Venue.  This Court has jurisdiction over these Cases, the Debtors,

property of the Debtors' Estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the entry of a final judgment or order with respect to the Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

C.    <u>Committee Formation</u>.  As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "<u>Committee</u>") or any other statutory committee has been appointed in the Cases.

D.    <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing, and the relief granted under this Interim Order constitutes sufficient notice and the Notice complies with Bankruptcy Rule 4001 and the Local Rules.

E.    <u>Parties' Acknowledgments, Agreements, and Stipulations</u>.  In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lenders and the Prepetition Secured Parties to agree to provide, or consent to, the DIP Facility, the use of Cash Collateral, and subordination of the Prepetition Liens to the Carve-Out (provided that with respect to the Prepetition ABL Secured Parties, the Prepetition ABL Liens are subject to the Carve-Out solely to the extent of the amount of the Carve-Out that can be satisfied with Available Cash Collateral (as defined below) previously remitted to the Debtors in accordance with Section 3.2(c) of this Interim Order, or with funds in the Carve-Out Reserve), as provided herein, and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral as set forth in this Interim Order, subject to the rights of any committee

appointed in these Cases or other parties in interest (other than the Debtors) set forth in Section 5.10 of this Interim Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

    (i) <u>Prepetition ABL Facility</u>.  Celadon Group, Inc. and certain subsidiaries thereto, as borrowers, (such parties, collectively, the "<u>Prepetition ABL Obligors</u>"), the lenders from time to time party thereto (collectively, the "<u>Prepetition ABL Lenders</u>"), and MidCap Funding IV Trust, a Delaware statutory trust ("<u>MidCap</u>"), as successor by assignment from MidCap Financial Trust, as administrative agent (in such capacity, the "<u>Prepetition ABL Agent</u>" and, together with the Prepetition ABL Lenders, the "<u>Prepetition ABL Secured Parties</u>"), are parties to that certain Credit and Security Agreement, dated as of July 31, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Prepetition ABL Credit Agreement</u>," and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition ABL Secured Parties, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "<u>Prepetition ABL Loan Documents</u>").  Pursuant to the Prepetition ABL Loan Documents, the Prepetition ABL Secured Parties provided the Prepetition ABL Obligors with an asset-based credit facility (the "<u>Prepetition ABL Facility</u>") with $60.0 million of maximum aggregate availability, subject to a borrowing base (as reduced by reserves), as set forth in the Prepetition ABL Credit Agreement. As of the Petition Date, the Prepetition ABL Obligors are liable for payment of the Prepetition ABL Obligations (as defined below) in an amount not less than $32,461,556.99, inclusive of any accrued interest, fees, costs, expenses and other amounts accrued as of the Petition Date, but

exclusive of interest, fees, costs, expenses and other amounts accruing pursuant to the Prepetition

ABL Loan Documents (all such indebtedness or obligations under the Prepetition ABL Loan

Documents, including all "Obligations" as defined in the Prepetition ABL Credit Agreement and

all interest, fees, costs, expenses and other amounts accrued and accruing thereon, herein referred

to as the "Prepetition ABL Obligations"). The Prepetition ABL Obligations are secured by (a) first

priority security interests in and liens on the ABL Priority Collateral as such term is defined in the

Prepetition Intercreditor Agreement[5] (the "ABL Priority Collateral"); and (b) second priority

security interests in and liens on the Term Priority Collateral as such term is defined in the

Prepetition Intercreditor Agreement[6] (the "Term Loan Priority Collateral," together with the ABL

---

[5]   "ABL Priority Collateral" shall mean all of the following assets that constitute Collateral, whether now owned or hereafter acquired (including any of the following assets acquired or created after the commencement of any Insolvency or Liquidation Proceeding) and wherever located:
(a)   all Accounts (other than Accounts arising under agreements for the Disposition of Term Priority Collateral);
(b)   all Chattel Paper (including all Electronic Chattel Paper and all Tangible Chattel Paper) to the extent evidencing, governing or otherwise relating to any of the items constituting ABL Priority Collateral under clause (a) above;
(c)   all Inventory (including, for the avoidance of doubt, Inventory that is or becomes branded, or produced through the use or other application of, any Intellectual Property);
(d)   all Deposit Accounts (other than any Asset Sale Proceeds Account) and all Money or other assets (including all cash equivalents), Financial Assets and Securities Entitlements contained in, or credited to, or arising from any such Deposit Accounts (in each case, except to the extent constituting identifiable Proceeds of Term Priority Collateral);
(e)   to the extent evidencing, governing, securing or otherwise relating to any of the items constituting ABL Priority Collateral under clauses (a) through (d) above, all General Intangibles and Intangibles (excluding Intellectual Property), Intercompany Indebtedness owing from a Mexican Subsidiary (to the extent such Mexican Subsidiary is not an ABL Obligor), an "Excluded Entity" or a "Dormant Subsidiary" (as each term is defined in the ABL Credit Agreement as in effect on the date hereof) to Celadon or a Subsidiary of Celadon that is an ABL Obligor and that arises from the sale or other disposition of ABL Priority Collateral or from the use of loan proceeds funded under the ABL Credit Agreement, Instruments (including Promissory Notes), Commercial Tort Claims, Documents and Documents of Title (in each case, except to the extent constituting identifiable Proceeds of Term Priority Collateral);
(f)   all collateral and guarantees given by any other Person with respect to any of the foregoing;
(g)   all insurance policies relating to ABL Priority Collateral (regardless of whether ABL Agent is the loss payee thereof) and all disbursements, payments of any claim and proceeds thereof, and 25% of all policies of business interruption insurance and proceeds thereof;
(h)   all Supporting Obligations (including Letter of Credit Rights) and all Proceeds of any of the foregoing, including Proceeds consisting of Commercial Tort Claims and Payment Intangibles arising from the Disposition or other collection of ABL Priority Collateral;
(i)   all books and Records to the extent relating to any of the foregoing; and
(j)   all Proceeds of each of the foregoing.
Notwithstanding the foregoing, the term "ABL Priority Collateral" shall not include any assets referred to in definition of "Term Priority Collateral".
[6]   "Term Priority Collateral" shall mean all of the following assets that constitute Collateral, whether now owned or

Priority Collateral, the "<u>Prepetition Collateral</u>", and such liens and security interests in clauses (a) and (b), the "<u>Prepetition ABL Liens</u>").

(ii)    <u>Prepetition Term Loan Facility</u>.    Celadon Group, Inc., as borrower, certain subsidiaries designated as "Guarantors" thereto (such parties, collectively, the "<u>Prepetition Term Loan Obligors</u>" and together with the Prepetition ABL Obligors, the "<u>Prepetition Obligors</u>"), the lenders from time to time party thereto (collectively, the "<u>Prepetition Term Loan Lenders</u>" and together with the Prepetition ABL Lenders, the "<u>Prepetition Lenders</u>"), and Blue Torch, as administrative agent (in such capacity, the "<u>Prepetition Term Loan Agent</u>" and, together with the Prepetition Term Loan Lenders, the "<u>Prepetition Term Loan Secured Parties</u>", and together with the Prepetition ABL Secured Parties, the "<u>Prepetition Secured Parties</u>"), are parties to that certain Second Amended and Restated Credit Agreement, dated as of July 31, 2019 (as amended, restated,

---

hereafter acquired (including any of the following assets acquired or created after the commencement of any Insolvency or Liquidation Proceeding) and wherever located:

(a)  all Equipment and all real property and interests therein (including both fee and leasehold interests) and all Fixtures;

(b)  all Intellectual Property;

(c)  all Capital Stock and other Investment Property (other than Investment Property constituting ABL Priority Collateral);

(d)  except to the extent constituting ABL Priority Collateral, all Instruments, Documents and other General Intangibles and Intangibles (including goodwill, intercompany obligations between or among the Loan Parties (other than Accounts included as ABL Priority Collateral), databases, customer lists, and tax refunds);

(e)  except to the extent constituting ABL Priority Collateral under clause (h) of the definition of such term, all Commercial Tort Claims;

(f)  all Asset Sale Proceeds Accounts and all Money, Financial Assets, Securities Entitlements or other assets contained in, or credited to, or arising from any such Asset Sale Proceeds Accounts (in each case, except to the extent constituting ABL Priority Collateral or identifiable Proceeds of ABL Priority Collateral);

(g)  all other Collateral not constituting ABL Priority Collateral;

(h)  all insurance policies relating to Term Priority Collateral (regardless of whether the Term Agent is the loss payee thereof) and all disbursements, payments of any claim and proceeds thereof, and 75% of all polices of business interruption insurance and proceeds thereof;

(i)  all collateral and guarantees given by any other Person with respect to any of the foregoing;

(j)  all Intercompany Indebtedness (which shall exclude, for the avoidance of doubt, Intercompany Indebtedness expressly set forth in clause (e) of the definition of the term "ABL Priority Collateral");

(k)  all Supporting Obligations (including Letter of Credit Rights) and all Proceeds of any of the foregoing;

(l)  all books and Records to the extent relating to any of the foregoing; and

(m)  all Proceeds of the foregoing.

Notwithstanding the foregoing, the term "Term Priority Collateral" shall not include any assets referred to in the definition of "ABL Priority Collateral".

amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement" and together with any other related agreements, documents or security agreements, collectively, the "Prepetition Term Loan Documents" and collectively, the Prepetition Term Loan Documents and Prepetition ABL Loan Documents, the "Prepetition Loan Documents").  Pursuant to the Prepetition Term Loan Documents, the Prepetition Term Loan Secured Parties provided the Prepetition Term Loan Obligors with term loan facilities in an aggregate principal amount of $105 million (the "Prepetition Term Loan Facility") and under which approximately $103.6 million in principal amount was outstanding as of the Petition Date, plus interest accrued and accruing at the rates set forth in the Prepetition Term Loan Credit Agreement (together with any other amounts outstanding under the Prepetition Term Loan Facility as provided in the Prepetition Term Loan Credit Agreement, including interest, prepayment and other fees, and expenses, the "Prepetition Term Loan Obligations" and together with the Prepetition ABL Obligations, the "Prepetition Obligations").  The Prepetition Term Loan Facility is secured by (a) first priority security interests in and liens on the Term Priority Collateral and (b) second priority security interests in and liens on the ABL Priority Collateral (such liens and security interests in clauses (a) and (b), the "Prepetition Term Loan Liens" and, together with the Prepetition ABL Liens, the "Prepetition Liens").

(iii)    Prepetition Intercreditor Agreement.  MidCap, in its capacity as Prepetition ABL Agent, and Blue Torch, in its capacity as Prepetition Term Loan Agent, are parties to that certain Intercreditor Agreement, dated as of July 31, 2019 (the "Prepetition Intercreditor Agreement").  The Prepetition Intercreditor Agreement is a valid and enforceable "subordination agreement" under section 510(a) of the Bankruptcy Code and other non-bankruptcy applicable law and is, as of the Petition Date, binding on all parties thereto.  The DIP Loan Agreement and other

DIP Loan Documents shall be and are subject to the terms of the Prepetition Intercreditor Agreement and the Prepetition Secured Parties hereby acknowledge and agree that the DIP Facility provided by the Term Secured Parties as the Senior Secured Parties (as such term is defined in the Prepetition Intercreditor Agreement) is a permitted Senior Priority DIP Financing, as such term is defined in the Prepetition Intercreditor Agreement.

(iv)   Prepetition Obligations.   The Prepetition Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms (except to the extent that enforcement thereof is stayed by any insolvency laws), and no portion of the Prepetition Obligations owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity. Upon entry of this Interim Order, for purposes of sections 506(c), 507(b) and Fed. R. Bankr. P. 3012, as of the Petition Date, the Prepetition ABL Secured Parties and the Prepetition Term Loan Secured Parties are oversecured; provided, however, that nothing in this Interim Order, the Motion, or the record of the Interim Hearing shall prejudice the rights of the Prepetition ABL Agent, any Prepetition ABL Lender, the Prepetition Term Loan Agent or any Prepetition Term Loan Lender, to assert, subject to the terms of the Prepetition Intercreditor Agreement, that their respective interests in the Prepetition Collateral lack adequate protection.

(v)   Prepetition Collateral.   To secure the Prepetition Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Secured Parties' respective security interests in the Prepetition

Collateral.  Pursuant to the Prepetition Collateral Documents, and on the terms set forth therein, the Debtors granted to the Prepetition Secured Parties the Prepetition Liens on the Prepetition Collateral.

       (vi)   <u>Prepetition Liens</u>.  The Prepetition Liens granted to the Prepetition Secured Parties constitute legal, valid, binding, enforceable (except to the extent that enforcement thereof is stayed by any insolvency law), and perfected security interests in and liens on the Prepetition Collateral, were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

       (vii)   <u>No Challenges/Claims</u>.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the

Bankruptcy Code or applicable state law equivalents. The Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

      (viii)   <u>Indemnity</u>. The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Prepetition Adequate Protection Liens (as defined below), and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(viii), in the Prepetition Loan Documents, or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders, as the case may be.

      (ix)   <u>Sale and Credit Bidding</u>. The Debtors admit, stipulate, acknowledge, and agree that, in connection with any sale process or sale authorized by the Court, (i) the DIP Agent and the DIP Lenders and (ii) subject to the entry of a Final Order and to the rights preserved in Section 5.10, the Prepetition ABL Secured Parties and the Prepetition Term Loan Secured Parties, or any assignee or designee of the foregoing, shall have the right to credit bid for the entirety of

(or any portion of) of Prepetition Collateral pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the rights and duties of the parties under the Prepetition Intercreditor Agreement.

(x)    <u>Release</u>.  Subject to Section 5.10, each of the Debtors, their Estates, the Borrowers, the Guarantors, and the Prepetition Obligors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "<u>Released Parties</u>") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the Prepetition Obligations or the Prepetition Loan Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar

16

provisions of applicable state, federal, or common law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations, the Prepetition Loan Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order.

      (xi)    <u>ABL Cash Collateral</u>.  The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts, that either constitutes ABL Priority Collateral or which represents income, proceeds, products, rents or profits of other ABL Priority Collateral, constitutes "cash collateral" of the Prepetition ABL Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>ABL Cash Collateral</u>").

      (xii)    <u>Term Loan Cash Collateral</u>.  The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts, including the Interest Reserve Account (as defined in the Prepetition Term Loan Credit Agreement), that constitutes identifiable proceeds of Term Loan Priority Collateral, constitutes "cash collateral" of the Prepetition Term Loan Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Term Loan Cash Collateral</u>", and, together with the ABL Cash Collateral, collectively the "<u>Cash Collateral</u>").

F.      Findings Regarding the Postpetition Financing and Use of Cash Collateral.

(i)      Postpetition Financing.  The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of this Interim Order and satisfaction of the conditions set forth in the DIP Loan Agreement, to extend the DIP Loans on the terms and conditions set forth in this Interim Order and the DIP Loan Documents, respectively.

(ii)      Need for Postpetition Financing and the Use of Cash Collateral.  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility, in each case, as set forth in this Interim Order, in order to, among other things, maintain, administer and preserve their businesses and maximize the value of their assets.  Without the ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties and the use of Cash Collateral as set forth in this Interim Order, the Debtors, their Estates, and parties-in-interest would be immediately and irreparably harmed.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, minimize the disruption of their business operations and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

(iii)      No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors assert

18

in the Motion and the First Day Declaration, and demonstrated at the Interim Hearing, that it would be futile under the circumstances for the Debtors to seek, and they would not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Secured Parties pursuant to the DIP Loan Documents.  In light of the foregoing, and considering the futility of all other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    Budget.  The Debtors have prepared and delivered to the DIP Secured Parties and the Prepetition Secured Parties an initial budget (the "Initial Budget"), a copy of which is attached hereto as **Exhibit C**.  The Initial Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the eighth calendar week following the Petition Date (the Initial Budget and each subsequent budget approved by the DIP Lenders and the Prepetition Secured Parties then in effect, an "Approved Budget").  The Debtors believe that the Initial Budget is reasonable under the facts and circumstances.  The DIP Secured Parties and the Prepetition Secured Parties are relying upon the Debtors' agreement to comply with the terms set forth in the DIP Loan Documents, the Approved Budget, and this Interim Order in determining to enter into the postpetition financing arrangements provided for herein and to consent to the Debtors' use of Cash Collateral.

(v)    Certain Conditions to DIP Facility.  The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things:  (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the obligations thereunder, and to confer

upon the DIP Secured Parties all applicable rights, powers, and remedies thereunder in each case as modified by this Interim Order; (b) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (c) the DIP Secured Parties being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject to the Carve Out and Permitted Liens and the priorities described in **Exhibit D** annexed hereto, superpriority perfected security interests in and liens upon all property and assets of the Debtors, including, but not limited to, a valid and perfected security interest in and lien upon all of the now existing or hereafter arising or acquired: (i) assets constituting Prepetition Collateral, (ii) any assets of the Debtors that, as of the Petition Date, were not otherwise subject to a valid, perfected, enforceable, and unavoidable security interest, including any assets comprising Excluded Collateral (under any of the Prepetition Loan Documents) (collectively hereinafter referred to as the "DIP Collateral," and for avoidance of doubt, the DIP Collateral shall include, subject to the entry of the Final Order, the proceeds (the "Avoidance Proceeds") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions")).

(vi)     Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to this Interim Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below)

shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

G.    <u>Adequate Protection</u>.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

H.    <u>Sections 506(c) and 552(b)</u>.  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim Order that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth in this Interim Order, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out (provided that with respect to the Prepetition ABL Secured Parties, the Prepetition ABL Liens are subject to the Carve-Out solely to the extent of the amount of the Carve-Out that can be satisfied with Available Cash Collateral (as defined below) previously remitted to the Debtors in accordance with Section 3.2(c) of this Interim Order or with funds in the Carve-Out Reserve), as provided herein, and (c) the consensual use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Loan Agreement, and the terms of this Interim Order, subject to entry of the Final Order containing such relief, the DIP Secured Parties and the Prepetition Secured Parties are entitled to receive (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

EAST\170870151.2

I.       Good Cause.  Good cause has been shown for the entry of this Interim Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' remaining operating businesses and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility and this Interim Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facility and this Interim Order are the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Secured Parties and the Prepetition Secured Parties.

J.       Immediate Entry.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

K.       Interim Hearing.  Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required for the relief to be granted in this Interim Order.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.        Motion Approval

1.1        Interim Approval of Motion.  The Motion is granted on an interim basis to the extent provided in this Interim Order.  Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein (except to the extent reserved to be presented at the Final Hearing), are hereby denied and overruled on the merits.

Section 2.        DIP Facility Authorization

2.1        Authorization of DIP Facility.

(a)        The Debtors are hereby authorized and empowered to immediately execute and deliver the DIP Loan Documents and to incur and perform the DIP Obligations, pursuant to the terms and conditions of the DIP Loan Agreement and this Interim Order, in an aggregate principal amount not to exceed $9.050 million, which amount, for the avoidance of doubt, includes the Comdata DIP Payment (as defined below) in the amount of $1.050 million, with the Initial DIP Loan to be made upon entry of this Interim Order and satisfaction of other conditions set forth in the DIP Loan Documents.

(b)        The Debtors are hereby authorized to (i) borrow under the DIP Facility during the Interim Financing Period (as defined below) in accordance with, and for the purposes permitted by, the DIP Loan Documents, the Interim Order and the Approved Budget and (ii) except with respect to the Exit Fee and the Additional Fee (as such terms are defined in the DIP Credit Agreement), which shall be payable subject to the terms and entry of the Final Order, pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Loan Agreement and other DIP Loan Documents, all pursuant to the terms and conditions of this Interim Order, the DIP Loan Agreement, and the other DIP Loan Documents, in each case during

the period commencing on the date of this Interim Order through and including the earlier to occur of (x) entry of the Final Order and (y) a DIP Termination Event (the "Interim Financing Period"); notwithstanding the foregoing, the Comdata DIP Payments, which were made prior to the commencement of the Interim Financing Period shall be deemed to be DIP Obligations.  The Initial Budget is hereby approved in all respects.  The Debtors shall use the proceeds of the DIP Facility solely in a manner consistent with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) and the terms and conditions of the DIP Loan Documents and this Interim Order.

(c)      On December 9, 2019, the DIP Agent, on behalf of the DIP Lenders, made an emergency payment on behalf of the Debtors to Comdata, Inc. ("Comdata"), a provider of gas cards and payroll services to the Debtors, in the amount of $800,000 (the "December 9 Comdata DIP Payment") to (a) repay Comdata for $400,000 in critical trade credit that it extended to the Debtors on December 7 and 8, 2019 in order to allow the Debtors' truck driver employees to continue to use their gas cards over the weekend and (b) pay $400,000 of prepetition amounts accrued and owing by the Debtors to Comdata.  The Debtors had a critical need for the trade credit in order to (i) avoid stranding hundreds of their driver employees on the road over the weekend, (ii) allow for the delivery of loads already en route to their destination, which generated new receivables for the Debtors and avoided breach of contract claims and (iii) allow for an orderly marshaling and preservation of value of their tractors and trailers during the shut-down of operations.  Without the agreement to reduce Comdata's prepetition claims against the Debtors by an amount equal to the amount of trade credit extended to the Debtors over the weekend, Comdata was not willing to provide this critical trade credit to the Debtors.  On December 10, 2019, the DIP Agent, on behalf of the DIP Lenders, made another emergency payment on behalf of the Debtors

to Comdata, Inc. in the amount $250,000 (together with the December 9 Comdata Payment, the "Comdata DIP Payments") to repay Comdata for $250,000 in critical trade credit provided on the evening of December 9, 2019 in order to keep the gas cards active during the night of December 9, 2019, once the previous trade credit advances were exhausted. Comdata has agreed to continue providing the Debtors with payroll and gas card services as long as Comdata is paid in advance for all such services. In consideration of Comdata's prepetition and postpetition accommodations to the Debtors and their estates, the Debtors, with the consent of the Prepetition Secured Parties and DIP Secured Parties, agreed to seek the approval of the Court for the postpetition payments to Comdata and Comdata's application of $400,000 to its prepetition unsecured claims. For good and valuable postpetition consideration extended by Comdata, the Court *nunc pro tunc* to the Petition Date hereby approves the Comdata DIP Payments to Comdata and Comdata's application of $400,000 to its prepetition unsecured claims. Comdata shall not be liable to disgorge or refund any portion of such the Comdata DIP Payments and shall have no liability under sections 544, 547, 548 or 549 of the Bankruptcy Code on account of the Comdata DIP Payments or application of the December 9 Comdata DIP Payment to its prepetition unsecured claims, subject to the entry of the Final Order providing such relief.

    2.2    Financing Documents.

        (a)    Authorization.    The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents. No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or common law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent

Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)     Approval; Evidence of Borrowing Arrangements.    All terms, conditions, and covenants set forth in the DIP Loan Documents (including, without limitation, the DIP Loan Agreement) are approved, other than the Exit Fee and Additional, which shall be subject to a Final Order providing such relief.  All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Agent, and the DIP Lenders, and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of the DIP Loan Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees, and other expenses, including, without limitation, all of the DIP Agent's and DIP Lender's closing, arranger, and administrative fees, consultant fees, professional fees, attorney's fees and legal expenses, as more fully set forth in the DIP Loan Documents.  Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.

(c)    <u>Payment of DIP Fees and Other Expenses</u>.   Any and all fees and expenses payable pursuant to the DIP Loan Documents (collectively, any and all such fees and expenses, the "<u>DIP Fees</u>") are, except for the Exit Fee and the Additional Fee, which shall be subject to the entry of the Final Order, hereby approved and the Debtors are hereby authorized and directed to pay, currently in cash or as otherwise provided on the DIP Loan Documents and Approved Budget, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agent and the DIP Lenders incurred at any time, as provided by the DIP Loan Documents, Approved Budget and this Interim Order in accordance with Section 5.13 hereof; <u>provided</u> that proceeds of ABL Priority Collateral (other than Available Cash Collateral (as defined below) shall not be used to pay any DIP Fees.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

2.3    <u>Indemnification</u>.    The Debtors are authorized to indemnify and hold harmless the DIP Agent, each DIP Lender, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (each, an "<u>Indemnified Party</u>"), in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved; provided that proceeds of ABL Priority Collateral (other than Available Cash Collateral (as defined below)) shall not be used to pay any amounts on account of such indemnification.

2.4    <u>Postpetition Liens</u>.

(a)      _Postpetition DIP Lien Granting_.   To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Secured Parties of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the DIP Lenders, shall have and are hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "DIP Liens") upon all DIP Collateral, subject to the rankings and priorities set forth in Section 2.4(b) below and as set forth on **Exhibit D** hereto.

(b)      _DIP Lien Priority in DIP Collateral_.   The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; _provided_, _however_, that the DIP Liens on (A) the ABL Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject and subordinate to the Carve-Out, the Permitted Liens, the Prepetition ABL Liens, the Prepetition ABL Adequate Protection Liens; (B) the Term Loan Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject and subordinate to the Carve-Out and Permitted Liens; and (C) any unencumbered assets as of the Petition Date shall be subject and subordinate to the Carve-Out, in each case as such priorities are set forth in **Exhibit D**.

2.5      _Superpriority Administrative Expenses_.   Subject to the priorities set forth on **Exhibit D** and the Carve-Out, all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP Agent, for the benefit of itself

and the DIP Lenders, is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, proceeds of Avoidance Actions) (such superpriority administrative expense claim, the "DIP Superpriority Claim").

Section 3.    Use of Cash Collateral

       3.1    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral as set forth in this Interim Order until the occurrence of a DIP Termination Event (as defined herein); provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Available Cash Collateral (as defined below) previously remitted to the Debtors in accordance with Section 3.2(c) of this Interim Order solely to meet payroll obligations and pay expenses critical to the administration of the Debtors' Estates strictly in accordance with the Approved Budget, and as otherwise agreed by the Prepetition ABL Agent and the Prepetition Term Loan Agent, each in their sole discretion.

       3.2    Procedure for Use of Cash Collateral.

       (a)    Delivery of Cash Collateral to Postpetition Agent.  Promptly upon receipt thereof (and with respect to Cash Collateral in the Debtors' possession as of the Filing Date, within one (1) Business Day of the date that this Interim Order is entered), Debtors shall remit all

29

Cash Collateral (other than Cash Collateral that is Term Loan Priority Collateral or that is identifiable proceeds of Term Priority Collateral) directly to Prepetition ABL Agent or shall deposit all Cash Collateral (other than identifiable proceeds of Term Priority Collateral) now or hereafter in their possession or control into deposit accounts subject to a blocked account control agreement that remits amounts therein daily to the Prepetition ABL Agent (or otherwise deliver such ABL Cash Collateral to Prepetition ABL Agent in a manner satisfactory to Prepetition ABL Agent); provided that the Debtors shall be entitled to retain $400,000 in Cash Collateral from cash on hand as of the Petition Date, which Cash Collateral may be used by the Debtors in accordance with the terms of this Interim Order.  For the avoidance of doubt, proceeds of accounts receivable owned by TA Dispatch and received by the Debtors do not constitute Cash Collateral.

   (b) <u>Cash Collateral in Prepetition ABL Agent's Possession</u>.  Prepetition ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any Prepetition ABL Lender's possession or control which constitute ABL Priority Collateral or proceeds thereof.  Prior to a DIP Termination Event, Prepetition ABL Agent will remit a portion of the Cash Collateral received by the Prepetition ABL Agent to the Debtors in accordance with Section 3.2(c) of this Interim Order and is authorized, subject to Section 5.10, to apply the balance of such Cash Collateral on the applicable Cash Collateral Remittance Date to permanently reduce the Prepetition ABL Obligations in accordance with the Prepetition ABL Loan Documents as adequate protection of the interests of the Prepetition ABL Secured Parties.

   (c) <u>Remittance of Available Cash Collateral</u>.  Commencing on December 17, 2019 (and on each Tuesday thereafter) (each, an "<u>Eligibility Reporting Date</u>"), the Debtors shall deliver to Prepetition ABL Agent information in form and substance reasonably

acceptable to Prepetition ABL Agent that identifies the portion of the cash collections received by the Prepetition ABL Agent during the week ended as of the preceding Friday that constitutes Cash Collateral and further identifies the portion of the Cash Collateral or other cash (in the case of TA Dispatch) received by the Prepetition ABL Agent as either (i) proceeds of Eligible Accounts (as defined in the Prepetition ABL Credit Agreement), (ii) proceeds of Accounts (as defined in the Prepetition ABL Credit Agreement) that are not Eligible Accounts (the "Ineligible Accounts") or (iii) receivables owned by TA Dispatch (which for the avoidance of doubt do not constitute Cash Collateral) (such information, the "Eligibility Breakdown Information").  The Borrowing Base Certificate dated as of December 6, 2019 shall be used in allocating the Debtors' owned receivables that were billed as of December 6, 2019 between Eligible Accounts and Ineligible Accounts in order to calculate the Eligibility Breakdown Information as required pursuant to this Interim Order, and the Debtors' owned receivables that are billed on or after December 6, 2019 shall be Eligible Accounts.  Commencing on December 18, 2019 (or such later date as the Debtors have provided Prepetition ABL Agent with Eligibility Breakdown Information satisfactory to Prepetition ABL Agent), and on each Wednesday (or Business Day thereafter if such Wednesday is not a Business Day) (each a "Cash Collateral Remittance Date"), the Prepetition ABL Agent shall remit to the Debtors (pursuant to wire instructions provided by the Debtors), (1) Cash Collateral in an amount equal to the sum of (w) five percent (5%) of the amount of Cash Collateral received by the Prepetition ABL Agent on account of Eligible Accounts in the prior week as provided in the Eligibility Breakdown Information for such week, plus (x) fifty percent (50%) of the amount of Cash Collateral received by the Prepetition ABL Agent on account of Ineligible Accounts in the prior week as provided in the Eligibility Breakdown Information for such week, plus (y) on each of the first five Cash Collateral Remittance Dates, $50,000, minus (z) should read "any amounts

deducted from amounts that otherwise would have been remitted to the Debtors under (w) and (x) above on account of any post-petition fees or expenses allowed in accordance with Section 5.13 hereof, and (2) 100% of cash received by the Prepetition ABL Agent on account of TA Dispatch Receivables in the prior week as provided in the Eligibility Breakdown Information for such week.  The portion of such Cash Collateral to be remitted to the Debtors in accordance with this paragraph being referred to herein as the "Available Cash Collateral".

       3.3     Application of Cash Collateral to Prepetition ABL Obligations.  Except with respect to the Available Cash Collateral as set forth in the preceding paragraph 3.2(c), Prepetition ABL Agent, is authorized to apply all Cash Collateral now or hereafter in Prepetition ABL Agent's or any Prepetition ABL Lender's possession or control to the payment of all other Prepetition ABL Obligations in accordance with the Prepetition ABL Loan Documents.  All such applications to Prepetition ABL Obligations shall be final, subject only to the right of parties in interest to seek a determination in accordance with Section 5.10 below that such applications to other Prepetition ABL Obligations resulted in the payment of any unsecured prepetition claim of the Prepetition ABL Secured Parties.

       3.4     TA Dispatch Cash.  The Debtors collect certain receivables on behalf of TA Dispatch (the "TA Dispatch Receivables").  The TA Dispatch Receivables are not property of the Debtors' Estates.  Upon receipt from the Prepetition ABL Agent of proceeds of TA Dispatch Receivables, on a Cash Collateral Remittance Date, the Debtors will segregate such TA Dispatch Receivables and remit them to TA Dispatch on a weekly basis beginning the week of December 15, 2019 within one (1) Business Day of each Cash Collateral Remittance Date.

       3.5     Termination Date.  Unless extended by the Court upon the prior written agreement of Prepetition ABL Agent, upon the DIP Termination Date without further notice or

order of Court: (1) Debtors' authorization to use Cash Collateral hereunder will automatically terminate; (2) Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the Prepetition ABL Obligations; and (3) subject to Section 5.10 of this Interim Order and the Prepetition Intercreditor Agreement, Prepetition ABL Agent and Prepetition ABL Lenders shall be entitled to apply any Cash Collateral in or coming into their possession or control to the Prepetition ABL Obligations in accordance with the Prepetition ABL Loan Documents.

Section 4.       Prepetition Secured Parties' Adequate Protection

4.1       Adequate Protection Liens and Superpriority Claims.    The Prepetition Secured Parties are entitled, pursuant to sections 361, and 363(e) of the Bankruptcy Code and *nunc pro tunc* to the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date.  On account of such adequate protection claims, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve-Out (provided that with respect to the Prepetition ABL Secured Parties, the Prepetition ABL Liens are subject to the Carve-Out solely to the extent of the amount of the Carve-Out that can be satisfied with Available Cash Collateral previously remitted in accordance with Section 3.2(c) of this Interim Order or with funds in the Carve-Out Reserve), as applicable, and Permitted Liens (collectively, the "Adequate Protection"):

(a)       Prepetition Term Loan Adequate Protection Liens.  The Prepetition Term Loan Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "Prepetition Term Loan Adequate Protection Liens"), which liens shall:  (i) be subject and subordinate to the Carve-Out,

Permitted Liens and the DIP Liens; (ii) be *pari passu* with the Prepetition Term Loan Liens against the Term Loan Collateral; (iii) be senior to all other security interests in, liens on, or claims against the Term Loan Priority Collateral, whether now existing or hereafter arising or acquired, (iv) be junior to the security interests in, liens on, and claims against the ABL Priority Collateral, whether now existing or hereafter arising or acquired, of the Prepetition ABL Secured Parties, including on account of the Prepetition ABL Adequate Protection Liens granted to the Prepetition ABL Secured Parties; (v) be *pari passu* with the Prepetition ABL Adequate Protection Liens (as defined below) with respect to all assets of the Debtors that are unencumbered as of the Petition Date; and (vi) in each case, for the avoidance of doubt, shall have the priorities set forth in **Exhibit D** hereto.

(b)     <u>Prepetition ABL Adequate Protection Liens</u>.  The Prepetition ABL Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>"), which liens shall:  (i) be subject and subordinate to the Carve-Out (to the extent of the amount of the Carve-Out that can be satisfied with Available Cash Collateral previously remitted in accordance with Section 3.2(c) of this Interim Order or with funds in the Carve-Out Reserve) Permitted Liens and the DIP Liens on the Term Loan Priority Collateral and unencumbered assets; (ii) be *pari passu* with the Prepetition ABL Liens against the ABL Priority Collateral; (iii) be senior to all other security interests in, liens on, or claims against the ABL Priority Collateral, whether now existing or hereafter arising or acquired; (iv) be junior to the security interests in, liens on, and claims against the Term Loan Priority Collateral, whether now existing or hereafter arising or acquired, of the Prepetition Term Loan Secured Parties, including on account of the Prepetition Term Loan Adequate Protection Liens granted to the Prepetition Term Loan Secured

Parties; (v) *pari passu* with the Prepetition Term Loan Adequate Protection Liens with respect to all assets of the Debtors that are unencumbered as of the Petition Date; and (vi) in each case, for the avoidance of doubt, shall have the priorities set forth in **Exhibit D** hereto.

          (c)     Adequate Protection Superpriority Claims.  The Prepetition Secured Parties are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), which Adequate Protection Superpriority Claims shall be allowed claims against each of the Debtors (jointly and severally), with priority (except they shall be junior to the Carve-Out and as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors, other than the DIP Superpriority Claim, now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code.  The Adequate Protection Superpriority Claims shall be *pari passu* with each other and be payable from and have recourse to all pre- and post-petition property (including all claims and causes of action) of the Debtors, subject to the Carve-Out and the priorities set forth in **Exhibit D**.

          4.2     Adequate Protection Payment for Prepetition Term Loan Secured Parties. The Prepetition Term Loan Agent currently holds and has possession of approximately $3 million (the "Interest Reserve Amount") of Cash Collateral, which Interest Reserve Amount is held in the Interest Reserve Account (as such term is defined in the Prepetition ABL Credit Agreement). Under the Prepetition Term Loan Agreement, after the occurrence and continuance of an Event of Default (as such term is defined in the Prepetition Term Loan Agreement), the Interest Reserve

Amount may be applied by the Prepetition Term Loan Agent to reduce the Prepetition Term Loan Obligations.  The Prepetition Term Loan Agent is hereby authorized to apply the Interest Reserve Amount to permanently reduce the Prepetition Term Loan Obligations in accordance with the terms of the Prepetition Term Loan Agreement, provided, such application shall be subject to Section 5.10 of this Interim Order

        4.3     <u>Adequate Protection Payments for Prepetition ABL Secured Parties</u>. Prepetition ABL Secured Parties have consented to the terms of this Interim Order and are entitled to adequate protection of the interests of the Prepetition Secured Parties in the Prepetition ABL Collateral, the Prepetition ABL Secured Parties are authorized to apply all Cash Collateral in the possession or control of the Prepetition ABL Agent (other than, prior to a DIP Termination Event, the Available Cash Collateral, and at any time, any TA Dispatch Receivables), to the Prepetition ABL Obligations in accordance with the Prepetition ABL Loan Documents.

        4.4     <u>Fees and Expenses</u>.  The Prepetition Secured Parties shall be entitled to add to the Prepetition Obligations or receive payment out of Cash Collateral in accordance with Section 3.2 of this Interim Order, all reasonable and documented fees and out-of-pocket expenses incurred and paid by such Prepetition Secured Parties that are required to be paid by the Debtors under the Prepetition Loan Documents (but no more than one set of primary counsel for each of the Prepetition ABL Secured Parties (as a whole) and the Prepetition Term Loan Secured Parties (as a whole), and allowed in accordance with Section 5.13 below, including the reasonable and documented pre- and post-petition fees and out-of-pocket expenses of (A)(i) Schulte Roth & Zabel LLP, (ii) Landis Rath & Cobb and (iii) FTI Consulting (together, the "<u>Prepetition Term Loan Professionals</u>") and (B) (i) Goldberg Kohn Ltd., (ii) Morris, Nichols, Arsht & Tunnell LLP, and (iii) MCA Financial Group (together, the "<u>Prepetition ABL Professionals</u>", and together with the

Prepetition Term Loan Professionals, the "Adequate Protection Professionals", and such fees and expenses, collectively, the "Adequate Protection Professional Fees and Expenses").

Section 5.    Provisions Common to DIP Facility and Use of Cash Collateral

     5.1    Postpetition Lien Perfection.

        (a)    This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a Control Agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is

authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law.  Should the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(b)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Interim Order (including the DIP Liens and the Prepetition Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; *provided*, *however*, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens.  By virtue of the terms of this Interim Order, to the extent that the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, has filed Uniform Commercial Code or PPSA financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Interim Order without further action by the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable.

(c)     Except as provided in Section 5.11 herein and with respect to the Carve-Out, the Carve-Out Reserve and Permitted Liens, the DIP Liens, the DIP Superpriority

Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of these Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Cases or any Successor Cases and/or upon the dismissal of any of these Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; or (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

   5.2 <u>Amendments to DIP Loan Documents</u>.  Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the applicable DIP Secured Parties may make amendments, modifications, or supplements to any DIP Loan Document, and the DIP Agent and the DIP Lenders may waive any provisions in the DIP Loan Documents, without further approval of the Court; <u>provided</u> that any amendments, modifications, or supplements to any DIP Loan Documents that are material, including those that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents (collectively, the "<u>Material DIP Amendments</u>"), shall be filed with the Court in advance of the effective date of such Material DIP Amendments, and the Debtors shall provide prior written notice of and an opportunity to object to the Material DIP Amendment to (i) counsel for each of the Prepetition Agents, (ii) counsel to the Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the Debtors' consolidated list of fifty (50) largest unsecured creditors, and (iii) the U.S. Trustee;

provided, further, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment subject to a timely and unresolved objection must be approved by the Court. For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment (i) from the DIP Secured Parties prior to filing notice thereof with the Court and (ii) from the Prepetition ABL Agent, on behalf of the Prepetition ABL Lenders, and Prepetition Term Loan Agent (together with the Prepetition ABL Agent, the "Prepetition Agents"), on behalf of the Prepetition Term Loan Lenders, as applicable, for any amendment, modification, supplement, or waiver to the Approved Budget or that materially adversely affects any rights of applicable Prepetition Secured Parties hereunder or the treatment of the applicable Prepetition Obligations hereunder.

5.3    DIP Termination Event.  The occurrence of one or more of the following shall constitute a "DIP Termination Event" (subject to the waiver or expiration of any applicable cure period, or unless waived in writing by the DIP Secured Parties and the Prepetition Secured Parties): (i) any "Event of Default" as that term is defined in the DIP Loan Agreement; (ii) any failure to meet or satisfy any Milestone (as defined in the DIP Loan Agreement) in accordance with the DIP Loan Agreement; (iii) the Maturity Date under the DIP Loan Agreement; (iv) solely with respect to the use of cash collateral, the failure of the Prepetition ABL Secured Obligations to be repaid in full in cash by the sixtieth (60th) day after the Petition Date; (v) Debtors' failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Interim Order; (vi) Debtors, without the consent of Prepetition ABL Agent, seek the use of ABL Cash Collateral other than in accordance with the terms of this Interim Order; (vii) the DIP Loan Documents are terminated, or if this Interim Order or DIP Loan Documents are modified in a manner adverse to Prepetition ABL Agent or the Prepetition ABL Lenders, without Prepetition

ABL Agent's prior written consent; (viii) the DIP Lenders breach their obligation to make a committed advance as required to be made by the DIP Lenders pursuant to the terms of this Interim Order or DIP Loan Documents; (ix) entry of any order authorizing any party in interest to reclaim any of the DIP Collateral, granting any party in interest relief from the automatic stay with respect to the DIP Collateral, or requiring that Debtors turnover any of the DIP Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Obligations, except to the extent permitted by the Prepetition Intercreditor Agreement; (x) any Case is converted to a case under chapter 7 of the Code; (xi) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtors' businesses is appointed in any Case; (xii) commencement of an adversary proceeding or contested matter objecting to the extent, validity or priority of any Prepetition Obligations and/or the Prepetition Liens; (xiii) the date that is 21 days following the entry of this Interim Order if a Final Order is not entered in form and substance acceptable to the Prepetition Secured Parties by such date; (xiv) the date of the Final Hearing, if this Interim Order is modified at the Final Hearing in a manner unacceptable to the Prepetition Secured Parties; or (xv) this Interim Order is modified, amended, vacated or stayed by any order of this Court in any manner not consented to in writing by the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Loan Agent.

5.4    <u>Rights and Remedies upon a DIP Termination Event</u>.  During the period covered by this Interim Order, after five (5) business days following the delivery of a written notice by the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent of the occurrence of and during the continuance of a DIP Termination Event (the "<u>Remedies Notice Period</u>"), (a) the DIP Agent shall be entitled to independently take any act or exercise any right or remedy as provided in this Interim Order or any DIP Loan Document, as applicable, including,

without limitation, (i) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (iii) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Loan Documents; and/or (v) stop lending and (b) the Prepetition ABL Agent and the Prepetition Term Loan Agent shall each have automatic and immediate relief from the automatic stay with respect to the Prepetition Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available under the Prepetition Loan Documents and applicable nonbankruptcy law (subject to the Prepetition Intercreditor Agreement), and the Debtors shall surrender the Prepetition Collateral and otherwise cooperate with Prepetition ABL Agent and the Prepetition Term Loan Agent in the exercise of their rights and remedies under the Prepetition Loan Documents and applicable nonbankruptcy law (subject to the Prepetition Intercreditor Agreement).  Notwithstanding the foregoing, during the five (5) calendar day period following the DIP Termination Date, Debtors may seek relief including an order of this Court determining that the event alleged to have given rise to the DIP Termination Date did not occur; provided, however, that during such five (5) calendar day period, Prepetition ABL Agent shall have no obligation to remit any Cash Collateral to Debtors pursuant to this Interim Order but the Debtor may use any Available Cash Collateral to meet payroll obligations and pay expenses critical to the administration of the Debtors' Estates strictly in accordance with the Approved Budget.

      5.5     <u>Debtors' Waivers</u>.

(a)      Prior to the payment in full of the Prepetition Obligations and all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event:  (i) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations and the Prepetition ABL Obligations, other than as provided in this Interim Order or, with respect to the DIP Obligations, as may be otherwise permitted pursuant to the DIP Loan Documents; (ii) to challenge the application of any payments authorized by this Interim Order pursuant to section 506(b) of the Bankruptcy Code; (iii) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lenders or the Prepetition Secured Parties, from exercising their credit bid rights in connection with the sale of any assets of the Debtors; or (iv) to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (A) the rights and remedies of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties against the Debtors as provided in this Interim Order or any of the DIP Loan Documents or Prepetition Loan Documents or (B) the exercise of such rights or remedies by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties against the Debtors in accordance with the DIP Loan Agreement, this Interim Order or the Prepetition Loan Documents; *provided*, *however*, that the DIP Agent, the Prepetition Term Loan Agent or the Prepetition ABL Agent, as applicable, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Agent, any DIP Lender or any Prepetition Secured Party.

(b)      It shall also be a DIP Termination Event if, prior to the payment in full of the DIP Facility or the Prepetition Obligations, the Debtors propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or

approving such sale, that is not conditioned upon the payment of the DIP Obligations (other than

indemnities then due and payable) and the obligations of the Prepetition Secured Parties in full in

cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder,

in full in cash, without the written consent of the DIP Agent, the DIP Lenders and the Prepetition

Secured Parties, as applicable.

       5.6     <u>Modification of Automatic Stay</u>.  The automatic stay provisions of

section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or

applicable law are hereby modified without further notice, application, or order of the Court to the

extent necessary to permit the Debtors and each of the DIP Agent, the Prepetition ABL Agent or

the Prepetition Term Loan Agent, as applicable, to perform any act authorized or permitted under

or by virtue of this Interim Order, the DIP Loan Agreement, or the other DIP Loan Documents, as

applicable, including, without limitation, (A) to execute, deliver and implement the postpetition

financing arrangements authorized by this Interim Order, (B) to take any act to create, validate,

evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (C) to

assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition

Obligations and DIP Obligations (or any portion thereof), including, without limitation, all

interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, the

Prepetition ABL Loan Documents or the Prepetition Term Loan Documents and apply such

payments to the applicable obligations, and (D) subject to the Remedies Notice Period, to take any

action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan

Documents, or applicable law.  For the avoidance of doubt, nothing herein shall confer any liens

or rights in favor of the Prepetition Secured Parties and the DIP Secured Parties with respect to the

Debtor(s)' equipment leases entered into with PNC and/or the equipment subject to the leases in

favor of PNC. Pursuant to the notice signed by the Debtors and delivered to PNC on or about the Petition Date, the automatic stay under section 362 of the Bankruptcy Code is modified to permit PNC, in its sole discretion, to retrieve, sell, transfer, re-let and otherwise dispose of the equipment subject to the leases in favor of PNC, without any further notice to the Prepetition Secured Parties and the DIP Secured Parties.

5.7    Reporting. The Debtors shall timely provide the Prepetition Secured Parties with (x) reasonable access to the Debtors' facilities, management, books, and records required under the Prepetition Loan Documents, (y) copies of all financial reporting provided to the DIP Agent and DIP Lenders pursuant to the DIP Loan Documents substantially simultaneously with such delivery to the DIP Lenders and (z) on Wednesday of each week, commencing with December 18, 2019, an updated Borrowing Base Certificate signed by a responsible Officer (as such terms are defined in the Prepetition ABL Credit Agreement), which Borrowing Base Certificate shall be provided for reporting purposes only. Debtors are also directed to allow Prepetition Secured Parties (and their representatives and advisors), reasonable access to all of the Debtors' premises, information systems, facilities, management, books, and records for the purpose of enabling Prepetition Secured Parties to inspect, appraise and audit the DIP Collateral. Without limiting the foregoing, the Debtors are also directed to allow representatives of the Prepetition ABL Agent and representatives of Prepetition ABL Agent's advisor, MCA Financial Group, to access all billing and collection information, including invoice history and such other information as may be reasonably requested by Prepetition ABL Agent (or its agents or advisors).

5.8    Budget Maintenance. The use of borrowings under the DIP Facility and the use of Cash Collateral shall be in accordance with the Initial Budget for the first eight week period from and after the Petition Date, which shall be in form and substance satisfactory to, and approved

by, each of the DIP Agent, the Prepetition Term Loan Agent and the Prepetition ABL Agent, in each's sole discretion (as so approved, the initial Approved Budget). The Approved Budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent) from time to time in accordance with the DIP Documents. No such updated, modified or supplemented budget shall be effective until so approved by each of the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent, and once approved shall be deemed the "Approved Budget"; provided, however, that in the event that the DIP Agent, the Prepetition Term Loan Agent, the Prepetition ABL Agent and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior Approved Budget shall continue in effect for these Cases, and such disagreement shall give rise to an Event of Default under the DIP Agreements and a DIP Termination Event under this Interim Order once the period covered by the prior Approved Budget has terminated. A copy of any Approved Budget shall be delivered to counsel for a Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the DIP Agent, the Prepetition Term Loan Agent and the Prepetition ABL Agent.

   5.9 <u>Carve-Out Provisions</u>.

    (a) For purposes of this Interim Order, "Carve-Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court (or in lieu thereof, fees and expenses incurred by the Debtors to any noticing. claims and solicitation agent appointed in the Cases) and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>"); (iii) subject to and only to the extent such amounts are included in the Approved Budget, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, subject to the Approved Budget,

all unpaid fees, costs, disbursements and expenses (the "Allowed Professional Fees") incurred or earned by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to, on or after delivery of a Carve-Out Trigger Notice (the "Pre-Trigger Carve-Out Cap"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice (such date, the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap" and such amounts set forth in clauses (i) through (iv), the "Carve-Out Cap"); provided that nothing herein shall be construed to impair any party's ability to object to court approval of the fees, expenses, reimbursement of expenses or compensation of any Professional Person.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to each other Prepetition Agent, and counsel to the Committee, if any (collectively, the "Carve-Out Trigger Notice Parties"), which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event, and shall describe in reasonable detail such DIP Termination Event that is alleged to have occurred and be continuing and stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

> (b)    By no later than February 1, 2020, in accordance with the amounts

budgeted for Professional Persons in the Approved Budget, and subject to availability of DIP Loans and Available Cash Collateral, the Debtors shall be required to deposit, in a segregated account not subject to the control of the DIP Agent, the DIP Secured Parties or the Prepetition Secured Parties (the "Carve-Out Reserve"), an amount equal to the Carve-Out Cap from the proceeds of the DIP Loans and Available Cash Collateral. The funds on deposit in the Carve-Out Account shall only be available to satisfy obligations benefiting from the Carve-Out, and the DIP Agent, the DIP Secured Parties and the Prepetition Secured Parties (x) shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of assets) of the Debtors to the extent necessary to fund the Carve-Out Account as provided above and (y) shall have a security interest upon any residual amount in the Carve-Out Account available following satisfaction in cash in full of all obligations benefiting from the Carve-Out. Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been issued, the Debtors shall be permitted to pay fees in accordance with the Approved Budget to the Professional Persons and reimburse expenses incurred by Professional Persons and that are allowed or authorized by the Court and payable under sections 328, 330, 331, and 1103 of the Bankruptcy Code and compensation procedures approved by the Court, as the same may be due and payable, it being understood that the Pre-Trigger Carve-Out Cap shall be reduced by actual payments of allowed Professional Fees included in the Pre-Trigger Carve-Out Cap made after the Termination Declaration Date. Notwithstanding anything to the contrary in this Interim Order, (A) the failure of the Carve-Out Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out and (B) in no way shall the Approved Budget, the Carve-Out, the Carve-Out Trigger Notice, the Pre-Trigger Carve-Out Cap, the Post-Carve-Out Trigger Notice Cap, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional

Fees due and payable to the Professional Persons. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(c)    No portion of the Carve-Out, DIP Collateral (including Cash Collateral) or proceeds of the DIP Loans may be used to pay any fees or expenses incurred by any entity (as defined in the Bankruptcy Code), including, without limitation, the Debtors, any Committee or the Professional Persons (as well as each and every creditor or party in interest), in connection with claims or causes of action adverse to the DIP Secured Parties' or the Prepetition Secured Parties' interests in the DIP Collateral, including (1) preventing, hindering or delaying any Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral once a DIP Termination Event has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any DIP Collateral without the DIP Agent's, the Prepetition ABL Agent's and the Prepetition Term Loan Agent's consent (to the extent required pursuant to the Prepetition Intercreditor Agreement); or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Obligations or any mortgages, liens or security interests with respect thereto or any other rights or interests of Prepetition Secured Parties, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Prepetition Secured Parties; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $50,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 5.10 of this Interim Order; provided, further, however, that the Carve-Out may be used to pay fees and expenses incurred by the Professional Persons in connection with the negotiation, preparation and

49

entry of this Interim Order or any amendment hereto consented to by the DIP Agent and the Prepetition Agents.

        5.10   <u>Reservation of Third Party Challenge Rights</u>.  The stipulations, releases, agreements, and admissions contained in this Interim Order, including, without limitation, paragraph E hereof, and the releases contained in clause (xii) thereof (collectively, the "<u>Debtors' Stipulations</u>"), shall be binding on the Debtors in all circumstances.  The Debtors' Stipulations shall be binding on all entities (as defined in the Bankruptcy Code), including without limitation, each and every creditor and party in interest, including, without limitation, the Committee (if any), unless, and solely to the extent that (a) any such creditor or party in interest, including the Committee (if any), with standing and requisite authority has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this Section 5.10) by no later than (i) with respect to the Prepetition Term Loan Lenders, the earliest of (A) if no Committee has been appointed, 75 calendar days from the date of entry of this Interim Order, (B) if a Committee has been appointed, 60 calendar days after the date of formation of such Committee, (ii) with respect to the Prepetition ABL Secured Parties, the earliest of (A) the date on which they are requested to release their liens following the discharge of the Prepetition ABL Obligations and (B) 35 days after the Petition Date, and (iii) any such later date as has been agreed to, in writing, without further order of the Court by the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable (such time period established by the foregoing clauses (i) and (ii), the "<u>Challenge Period</u>"), against any Prepetition Secured Party in connection with matters related to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, including by (A) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Obligations or

50

Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims, or causes of action, objections, contests, or defenses with respect to the Prepetition Obligations, Prepetition Liens or the acts or omissions of any Prepetition Secured Party (a "Challenge Proceeding") and (b) there is a final, non-appealable order in favor of the plaintiff sustaining any Challenge Proceeding in any such timely filed adversary proceeding or contested matter; provided that any pleadings filed in connection with any Challenge Proceeding shall set forth with specificity the basis for such Challenge and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.  For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding (and such Challenge shall be limited to the Challenge identified with specificity prior to the expiration of the Challenge Period).  If no such Challenge Proceeding is timely commenced, then:   (v) the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order, including, without limitation, those contained in paragraph E of this Interim Order, and the releases contained in clause (x) thereof, shall be binding on all parties in interest, (w) any and all Challenge Proceedings by any party (including, without limitation, the Committee, any chapter 11 trustee, or any examiner and/or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (x) to the extent not theretofore repaid, the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, for all purposes in these Cases and any subsequent chapter 7 case; (y) the Prepetition

51

Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph E hereof, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the obligations under the Prepetition Loan Documents and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtors, the Committee (if any) or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto).  If any Challenge Proceeding is timely commenced, the stipulations, releases, agreements, and admissions contained in paragraph E of this Interim Order, and the releases contained in clause (x) thereof, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Committee (if any), and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any entity (as defined in the Bankruptcy Code), including the Committee (if any), standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, claims and defenses with respect to the Prepetition ABL Credit Agreement or Prepetition Term Loan Agreement or the Prepetition Liens on the Prepetition Collateral.  Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Period, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the end of the Challenge Period or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Case to chapter 7, as applicable, to commence a Challenge, subject to any

further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

5.11    No Modification or Stay of this Interim Order.  The DIP Agent and the DIP Lenders have acted in good faith in connection with the DIP Facility and with this Interim Order, and their reliance on this Interim Order is in good faith, and the DIP Agent and the DIP Lenders are entitled to the protections of Bankruptcy Code section 364(e).

5.12    Power to Waive Rights; Duties to Third Parties.

(a)    Subject to the terms of the DIP Loan Documents, the DIP Agent shall have the right (acting at the direction of the Required Lenders (as defined in the DIP Loan Documents) if so required by the DIP Loan Documents) to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lenders (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s); *provided* that the DIP Agent shall obtain the prior written consent of the Prepetition ABL Agent and the Prepetition Term Loan Agent, as applicable, for any waiver that affects any rights of the Prepetition Secured Parties, as applicable, hereunder or any treatment of the Prepetition ABL Obligations. Any waiver by the DIP Agent of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

(b)     Each of the Prepetition ABL Agent and the Prepetition Term Loan Agent shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the Prepetition ABL Secured Parties or the Prepetition Term Loan Secured Parties, respectively (as applicable, the "Prepetition Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Lender Right(s); *provided* that the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, shall (except to the extent provided in the Prepetition Intercreditor Agreement) obtain the prior written consent of the DIP Agent for any waiver that affects any rights of the DIP Secured Parties hereunder or any treatment of the DIP Obligations.   Any waiver by either the Prepetition ABL Agent or the Prepetition Term Loan Agent of any Prepetition Lender Rights shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein.   Any delay in or failure to exercise or enforce any Prepetition Lender Right shall neither constitute a waiver of such Prepetition Lender Right, subject the Prepetition Agents or any Prepetition Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the Prepetition Agents or any Prepetition Lender.

5.13   DIP and Other Expenses; Procedures for Payment of DIP Agents' and Prepetition Secured Parties' Professional Fees and Expenses.  Any time that professionals for the DIP Agent and the Adequate Protection Professionals seek payment of postpetition fees and expenses from the Debtors, each professional shall provide copies of its invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the

extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the U.S. Trustee and counsel for a Committee (if appointed).  If no written objection is received by the applicable professional by 12:00 p.m., prevailing Eastern Time, on the date that is ten business (10) days after delivery of such invoice to the Debtors, the U.S. Trustee, and any Committee, such fees and expenses shall be deemed allowed in full, and with respect to a DIP Agent or DIP Lender professional, paid promptly by the Debtors. If an objection to a professional's invoice is timely received by such professional, such fees and expenses shall be deemed allowed in the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Pending such resolution, the undisputed portion of any such invoice will be deemed allowed, and (i) with respect to a DIP Agent or DIP Lender professionals, paid promptly by the Debtors and (ii) with respect to the Adequate Protection Professionals for the Prepetition ABL Secured Parties, paid out of Available Cash Collateral that would otherwise have been remitted to the Debtors pursuant to Section 3.2(c) hereof.  Notwithstanding the foregoing, subject to and only to the extent such amounts are included in the Approved Budget, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Documents) all reasonable, undisputed and documented pre-petition fees, costs and expenses, including fees and expenses of counsel, of the DIP Agent and the Prepetition Secured Parties incurred on or prior to (including prior to the Petition Date) such date without the need for any professional engaged by the DIP Agent or the Adequate Protection Professionals to first deliver a copy of its invoice as provided for herein.  The DIP Agent professionals and the Adequate Protection Professionals shall

not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

       5.14   <u>No Unauthorized Disposition of Collateral</u>.  The Debtors shall not sell, transfer, encumber, otherwise dispose of, or enter into any lease post-Petition Date for, any portion of the DIP Collateral (including equipment and Cash Collateral), other than in ordinary course of the Debtors' businesses or pursuant to the terms of this Interim Order or as permitted by the DIP Loan Documents or further order of the Court.

       5.15   <u>No Waiver</u>.  The failure of the DIP Lenders or the Prepetition Lenders, as applicable, to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, the Prepetition Loan Documents, the Prepetition Facilities, or the Interim Order, as applicable, shall not constitute a waiver of any of the DIP Lenders' or Prepetition Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lenders or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lenders and the Prepetition Lenders to: (a) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lenders or the Prepetition Lenders.

       5.16   <u>Maintenance of Collateral</u>.  Unless the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent otherwise consents in writing, until (i) the payment

in full or otherwise acceptable satisfaction of all DIP Obligations and the Prepetition ABL Obligations and (ii) the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, each of the DIP Agent (on behalf of the DIP Lenders), the Prepetition ABL Agent (on behalf of the Prepetition ABL Lenders) and the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

       5.17   Reservation of Rights.  The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Secured Party and Prepetition Secured Party, subject to the Prepetition Intercreditor Agreement, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the Prepetition Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

5.18   <u>Binding Effect</u>.

(a)      All of the provisions of this Interim Order and the DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of each of the DIP Secured Parties and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Agent, DIP Lenders, and Prepetition Secured Parties set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Section E of this Interim Order, subject to Section 5.10 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for hereunder) provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision hereof; *provided* that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order; *provided further* that such Final Order must affirm

58

each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.

(b)     No order dismissing one or more of the Cases under section 1112 or otherwise may impair the DIP Superpriority Claim, the Adequate Protection Superpriority Claim, and the DIP Secured Parties' and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Interim Order, which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition Obligations are indefeasibly paid and satisfied in full. Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Interim Order.

(c)     Except as set forth in this Interim Order, in the event this Court modifies, reverses, vacates, or stays any of the provisions of this Interim Order or any of the DIP Loan Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Agents, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims or (iii) rights or priorities of the DIP Agent, DIP Lenders or the Prepetition Secured Parties pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations.  All such liens, security interests, claims and other benefits shall be governed

in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.

(d)     This Interim Order shall be binding upon the Debtors, the Prepetition Term Loan Obligors, the Prepetition ABL Obligors, all parties in interest in the Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Interim Order shall also inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, and each of their respective successors and assigns.

5.19    Discharge.  Subject to the entry of the Final Order, the DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, has otherwise agreed in writing.

5.20    No Priming of Prepetition Obligations.  Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the Prepetition Lenders, no Debtor shall seek authorization from this Court to obtain or incur any Indebtedness or enter into an alternative financing facility from a party other than the DIP

Lenders (a "Competing DIP Facility") seeking to impose liens on any DIP Collateral ranking on a *pari passu* or priming basis with respect to the DIP Liens held by the Prepetition Secured Parties; *provided*, *however*, that nothing herein shall preclude the Debtors from seeking authorization to incur any Indebtedness or enter into any Competing DIP Facility that provides for the payment in full of the DIP Obligations and the Prepetition Obligations at the initial closing of such Competing DIP Facility.

5.21    Section 506(c) Waiver.    Subject to the entry of the Final Order providing such relief, no costs or expenses of administration which have been or may be incurred in these Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Agent or the DIP Lenders upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be charged against the DIP Agent, DIP Lenders, or Prepetition Secured Parties, or any of the DIP Obligations or Prepetition Obligations or the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Secured Parties and/or affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

5.22    Section 552(b) Waiver.    The Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim Order that, subject to entry of the Final Order, the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Agent, the DIP Lenders, the DIP

61

Obligations, and, subject to entry of the Final Order, providing such relief, the Prepetition Secured Parties, or the Prepetition Obligations.

5.23    <u>No Marshaling/Application of Proceeds</u>.

(a)    In no event shall the DIP Agent, the DIP Lenders, or, subject to the entry of the Final Order, providing such relief, the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Loan Documents (including the Prepetition Intercreditor Agreement), as applicable.

(b)    Notwithstanding anything to the contrary in this Interim Order, but subject in all respects to the priorities set forth on **<u>Exhibit D</u>** hereto, the DIP Obligations shall be satisfied from the proceeds of DIP Collateral.

5.24    <u>Relief Subject to a Final Order</u>.  For the avoidance of doubt, nothing in this Interim Order shall be deemed to grant or approve (a) a waiver of the Debtors' ability to surcharge against any Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code with respect to the DIP Secured Parties or any of the Prepetition Secured Parties; (c) except as provided in Section 5.23 hereof, the application of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral; or (d) a lien on or superpriority claim against the Avoidance Proceeds.

5.25    <u>Limits on Lender Liability</u>.

(a)    Subject to entry of the Final Order and Section 5.10 hereof, in determining to make any loan under the DIP Loan Agreement, authorizing the use of Cash

Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors.    Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)      Nothing in this Interim Order or the DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)      As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

5.26    <u>Release</u>.  Subject to Section 5.10 of this Interim Order, each of the Debtors, their Estates, the Borrowers, the Guarantors, and the Prepetition Obligors, on their own behalf and

on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Secured Parties and the Prepetition Secured Parties and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the DIP Facility or the DIP Loan Documents or (ii) the Prepetition Loan Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Loan Documents, or the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to

the payment of the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or released to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order.

       5.27   <u>Release of Liens</u>.

       (a)     Subject to entry of the Final Order and Section 5.10 hereof, upon the date that the Discharge of ABL Obligations (as defined in the Prepetition Intercreditor Agreement) occurs and prior to the release of the Prepetition ABL Liens, Debtors shall execute and deliver to Prepetition ABL Agent and Prepetition ABL Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition ABL Loan Documents.

       (b)     From and after the Discharge of the ABL Obligations, the release of the Prepetition ABL Liens, and the release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition ABL Loan Documents all consent rights under this Interim Order of the Prepetition ABL Agent, shall be conferred to and vested in the DIP Agent or the Prepetition Term Loan Agent, as applicable.  For the avoidance of doubt, nothing in this clause (b) shall affect or otherwise modify the rights of the Prepetition ABL Agent under the Prepetition ABL Credit Agreement.

       5.28   <u>Survival</u>.  The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Cases, (b) converting any or all of these Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Cases,

(d) terminating the joint administration of these Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents or the Prepetition Intercreditor Agreement), or (f) pursuant to which the Court abstains from hearing any of these Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Cases, following dismissal of any of these Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition Obligations, all of the adequate protection obligations owed to the Prepetition Secured Parties provided for in this Interim Order and under the Prepetition ABL Credit Agreement or the Prepetition Term Loan Agreement  have been indefeasibly paid in full in cash.

       5.29    Proofs of Claim.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of these Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Interim Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Notwithstanding the foregoing, any Prepetition Agent (on behalf of itself and the Prepetition Lenders) is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim for any claims of any of the Prepetition

Secured Parties arising from the Prepetition Loan Documents or in respect of the Prepetition Obligations; *provided*, *however*, that nothing in this Interim Order shall waive the right of any Prepetition Lender to file its own proof of claim against any of the Debtors.

5.30    No Third Party Rights. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

5.31    No Avoidance. Subject to Section 5.10 hereof, no obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from the DIP Agent or the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

5.32    Reliance on Order.    All postpetition advances under the DIP Loan Documents are made in reliance on this Interim Order.

5.33    Payments Free and Clear. Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Secured Parties or the Prepetition Agents on behalf of the applicable Prepetition Secured Parties, pursuant to the provisions of this Interim Order, any subsequent order of this Court or the DIP Loan Documents, shall, subject to Section 5.10 hereof, and if applicable, section 506(c) and 552(b) of the Bankruptcy Code, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve-Out in all respects (but, with respect to the Prepetition ABL Secured Parties, solely to the extent of the amount of the Carve-Out that can be satisfied with Available Cash Collateral (as defined below) previously remitted to the Debtors in accordance with Section 3.2(c) of this Interim Order or with funds in the Carve-Out Reserve).

5.34    <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

5.35    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

5.36    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

5.37    <u>General Authorization</u>. The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

5.38    <u>Retention of Exclusive Jurisdiction</u>.  This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Loan Agreement, and the other DIP Loan Documents.

5.39    <u>Final Hearing and Response Dates</u>.  The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on January 3, 2020, at 10:00 a.m., prevailing Eastern Time.  The Debtors shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or the Committee's counsel if same shall have filed a request for notice.  The Motion and this Interim Order are available at the Debtors' claims and noticing agent's website: https://www.kccllc.net/Celadon.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon the Notice Parties and shall be filed with the Clerk of the United States Bankruptcy Court for the

District of Delaware, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m.

(prevailing Eastern Time), on December 27, 2019.

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: December 10th, 2019**
**Wilmington, Delaware**

69