## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                              :
In re:                                        :   Chapter 11
                                              :
    CELADON GROUP, INC., *et al.*,[1]            :   Case No. 19-12606 (KBO)
                                              :
    Debtors.                                  :   (Jointly Administered)
                                              :
                                              :   **Related D.I.: 48, 61, 72**
                                              :
---------------------------------------------------------------x

## SUPPLEMENT TO INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Upon the *Motion,* as defined in the Interim DIP Order [D.I. 61] (as defined below) and the

*Notice of Material DIP Amendment and Updated Approved Budget Pursuant to the Interim Order*

*Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to*

*Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and*

*Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition*

*Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V)*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

*Scheduling a Final Hearing and (VI) Granting Related Relief*[2] [D.I. 72] (the "Notice of Material DIP Amendment") and the hearing ("Supplemental Interim Hearing") held by this Court on December 16, 2019 regarding such Material DIP Amendment, and upon the record made by the Debtors at the Supplemental Interim Hearing, including the Motion, the Notice, and exhibits in connection with the foregoing, and the filings and pleadings in these Cases, the Court having found that the approval of the Material DIP Amendment is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of certain of the Debtors' businesses, and in order to avoid immediate and irreparable harm to the Estates and the preservation of the value of the Debtors' Estates; it appearing to the Court that granting the supplemental interim relief relating to the Material DIP Amendment is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate notice of the Material DIP Amendment, the supplemental interim relief requested therein, and the notice of the Supplemental Interim Hearing (the "Notice") having been given under the circumstances; and the Notice having been served by the Debtors in accordance with the Interim DIP Order on the Material DIP Amendment Notice Parties, as defined in the Notice of Material DIP Amendment; and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and sufficient cause appearing therefor:

---

[2]     Capitalized terms that are used herein but not defined shall have the meanings set forth in the Notice of Material DIP Amendment.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

<u>Entry of the Interim DIP Order</u>

A.      On December 10, 2019, the Court held a hearing (the "<u>Interim DIP Motion Hearing</u>") on the DIP Motion and entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [D.I. 61] (the "<u>Interim DIP Order</u>").[4]   The Debtors and the DIP Secured Parties closed the DIP Loan Agreement effective December 11, 2019.

<u>The Material DIP Amendment</u>

B.      As announced to the Court on the record of the hearing held December 10, 2019, the Debtors, the DIP Agent and the DIP Lenders intend to enter into that certain Amended and Restated DIP Note dated as of December 16, 2019 (the "<u>Amended and Restated DIP Loan Agreement</u>").  Pursuant to the Amended and Restated DIP Loan Agreement, the DIP Commitment would increase by $2.2 million (the "<u>Taylor Sub-Facility</u>") from $9.050 million to $11.250 million (the "<u>Amended DIP Commitment</u>").  The Interest Rate, Facility Fee and, subject to entry of a Final Order providing the requested relief, the Exit Fee, will be applicable to Amended DIP Commitment and all amounts borrowed under the Taylor Sub-Facility.   A copy of the

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[4]      Capitalized terms used herein that are not defined shall have the meanings set forth in the Interim DIP Order.

Amended and Restated DIP Loan Agreement is attached hereto as **Exhibit A**. The changes included in the Amended and Restated DIP Loan Agreement constitute a Material DIP Amendment.

C.      Both the Prepetition ABL Agent, on behalf of the Prepetition ABL Lenders, and the Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan Lenders, have reviewed and consented to the Amended and Restated DIP Loan Agreement prior to the filing of this Notice.

D.      The Amended and Restated DIP Loan Agreement has been provided the Material DIP Amendment Notice Parties in accordance with Section 5.2 of the Interim DIP Order.

The Taylor Sub-Facility

E.      The DIP Facility as approved by the Interim Order did not include sufficient funding for the continuation of Debtor, Taylor Express, Inc.'s ("Taylor") business after the week of December 9, 2019. However, it has become clear to the Debtors and the DIP Secured Parties that there are parties interested in purchasing the Taylor business as a going concern. The Debtors and the DIP Secured Parties believe that the added value of selling Taylor as a going concern versus liquidating it is greater than the amount of the Taylor Sub-Facility and therefore, that the increase in the DIP Commitment is beneficial to the Debtors and their Estates and will aid in maximizing the value of the Debtors' assets.

F.      To that end, the Taylor Sub-Facility will be used to continue the operations of Taylor while a sale process is conducted to sell Taylor as a going concern.

G.      On December 10, 2019, the Debtors filed the *Motion of the Debtors for Orders (I)(A) Approving* Bidding *Procedures and Bid Protections (B) Permitting Debtors to Designate Stalking Horse Purchaser(s) and Grant Bid Protections, (C) Scheduling a Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice of Sale, and (E)*

*Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets of Taylor Express, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 48] (the "Taylor Sale Motion").  The Taylor Sale Motion is currently scheduled to be heard on January 3, 2020.

H.     However, if the Debtors are not able to access a portion of the Amended DIP Commitment under the Taylor Sub-Facility by December 16, 2019, Taylor's operations will need to be shut down because it will not have access to sufficient funds to pay for the continuation of its business and the going concern value of Taylor will be lost.  The Debtors anticipate that they will need to draw approximately $1.2 million of the Amended DIP Commitment during the Interim Period and prior to a final hearing of the DIP Facility on January 3, 2020 (the "Interim Amount").

Updated Approved Budget

I.     The Debtors have prepared a supplemental budget, which includes the cash needs of Taylor.  The supplemental budget has been approved by the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent.  Contingent upon the effectiveness of the Amended and Restated DIP Loan Agreement, in accordance with Section 5.8 of the Interim DIP Order, the supplemental budget will become a part of the Approved Budget.   A copy of the Approved Supplemental Budget is attached hereto as **Exhibit B**.

Effectiveness of the Amended and Restated DIP Loan Agreement

J.     Pursuant to Section 5.2 of the Interim DIP Order, when a Material DIP Amendment is contemplated, the Debtors must provide prior written notice of and an opportunity to object to it to (i) counsel for each of the Prepetition Agents, (ii) counsel to the Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the Debtors'

consolidated fifty (50) largest unsecured creditors, and (iii) the U.S. Trustee (the "Material DIP Amendment Notice Parties").

K.     The Material DIP Amendment may become effective if, after notice to the Material DIP Amendment Notice Parties, no objections are raised to it or if any such objections are overruled by the Court.

L.     The Notice of Material DIP Amendment provided the requisite notice required by Section 5.2 of the Interim DIP Order for approval of a Material DIP Amendment.

Based on the foregoing, and upon the record made before the Court at the Interim Hearing and the Supplemental Interim Hearing, and after due consideration and good cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Debtors are authorized and empowered to immediately execute, deliver and perform all obligations under the Amended and Restated DIP Loan Agreement and to increase the DIP Commitment to the Amended DIP Commitment and to incur the Taylor Sub-Facility obligations thereunder, pursuant to the terms and conditions of the Amended and Restated DIP Loan Agreement, the Interim Order and this Supplemental Interim Order.

2.     The Debtors are authorized to borrow under the Amended and Restated DIP Loan Agreement $1.2 million (the "Supplemental Initial DIP Loan") during the Interim Financing Period in accordance with, and for the purposes permitted by, the Amended and Restated DIP Loan Agreement, the Interim Order, this Supplemental Interim Order and the Approved Budget.

3.     The Amended and Restated DIP Loan Agreement is a Material DIP Amendment that the Debtors are permitted to enter into upon satisfaction of the procedures set forth in Section 5.2 of the Interim DIP Order. The Debtors have complied with such procedures, including, without

limitation, by filing and serving the Notice of Material DIP Amendment on the Material DIP Amendment Notice Parties.

4.    The Interim DIP Order remains in full force and effect, including with respect to the Amended and Restated DIP Loan Agreement and, except as expressly set forth herein, the Interim DIP Order shall not be, and has not been, amended, supplemented or otherwise modified.


*Ka B. O*

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: December 16th, 2019**
**Wilmington, Delaware**

DOC ID - 33147121.2                    7