## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CELADON GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12606 (KBO)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 3, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: December 27, 2019 at 4:00 p.m. (ET)**<br><br>**Re: Docket Nos. 48 & 79** |

### LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE (I) DEBTORS' MOTION APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF TAYLOR EXPRESS, INC. AND (II) DEBTORS' MOTION APPROVING BIDDING PROCEDURES FOR THE SALE OF THE REMAINING ASSETS

The Official Committee of Unsecured Creditors (the "Committee") of the debtors and

debtors in possession in the above-captioned cases (the "Debtors"), by and through its proposed

undersigned counsel, respectfully submits this limited objection (the "Objection") to (i) *Motion of*

*the Debtors for Orders: (I)(A) Approving Bidding Procedures and Bid Protections, (B) Permitting*

*Debtors to Designate Stalking Horse Purchaser(s) and Grant Bid Protections, (C) Scheduling a*

*Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice*

*of Sale, and (E) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of*

*Substantially All Assets of Taylor Express, Inc. Free and Clear of Liens, Claims, Interests, and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

*Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 48] (the "<u>Going-Concern Sale Motion</u>") and (ii) *Motion of the Debtors for Orders: (I)(A) Approving Bidding Procedures for the Sale of the Remaining Assets and Setting Bid Protections Guidelines, (B) Permitting Debtors to Designate Stalking Horse Purchaser(s) and Grant Bid Protections, (C) Scheduling a Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice of Sale, and (E) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets of Certain of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 79] (the "<u>Remaining Assets Sale Motion</u>", and together with the Going-Concern Sale Motion, the "<u>Sale Motions</u>").[2]  In support of its Objection, the Committee respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>[3]**

1.      The Debtors have presented the Court and all parties-in-interest with a 40-day sale timeline over the holidays and new year that does not appear to be a value-maximizing process. The Debtors have not retained an investment banker to market the Debtors' Assets, and the Committee believes additional value could be realized with a longer marketing process for the Taylor Assets, as well as the Debtors' Mexican businesses, known as "Jaguar,"[4] and other assets.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motions, as applicable.

[3] The Committee's Objection applies equally to both Sale Motions, except as otherwise noted.

[4] While the Jaguar business is currently shut down due to a labor dispute, prior to the strike it was a highly profitable and successful business generating millions of EBITDA during the last twelve months.  It is critical that all avenues for unlocking value at Jaguar be explored.

Additional time will allow for potential purchasers to conduct diligence into *all* of the Debtors' Assets, which will maximize value for all parties-in-interest, and not just the Debtors' prepetition secured lenders.

2.    The Committee also objects to:

    a.   the proposed pre-approval of Bid Protections;

    b.   the addition of certain protections related to any proposed credit bidding by the Debtors' secured lenders, despite the Committee's challenge period not having been expired; and

    c.   any marketing process that does not specifically preserve for the benefit of the Debtors' estates avoidance actions and causes of action against the Debtors' insiders (including those accused by the SEC and DOJ of serious misconduct) and any other party that enabled, assisted, or benefitted from their misconduct as well as the preservation of access to key books, records, and personnel.

3.    In short, the Committee supports a value-maximizing, transparent, and fair sale process for the Debtors' assets, but at this time, the Committee is not convinced that the Bidding Procedures are in the best interests of the Debtors' estates, and in any event, at a minimum, requests certain revisions to the proposed form of order and Bidding Procedures, as described further below.

## RELEVANT BACKGROUND

4.    On December 9, 2019 (the "Petition Date"), the Debtors filed voluntary petitions (the "Chapter 11 Cases") with this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

5.      Also on the Petition Date, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 11] (the "DIP Motion").

6.      On December 10, 2019, the Debtors filed the Going-Concern Sale Motion, seeking entry of an Order approving the auction and sale procedures in connection with a going-concern sale of the Taylor Express, Inc. assets (the "Taylor Assets").

7.      On December 14, 2019, the Debtors filed the Remaining Assets Sale Motion, seeking entry of an Order approving the auction and sale procedures in connection with one or more sales of the Debtors' Remaining Assets as well as the Debtors' De Minimis Assets.

8.      By the Sale Motions, the Debtors seek to impose the following sale timeline:

| Deadline | Date |
|---|---|
| Bid Procedures Objection Deadline | December 27, 2019 |
| Bidding Procedures Hearing | January 3, 2020 |
| Bid Deadline | January 13, 2020 |
| Auction | January 15, 2020 |
| Sale Objection Deadline | January 17, 2020 |
| Sale Hearing | January 21, 2020 |
| Deadline for Entry of Sale Order[5] | January 22, 2020 |
| Deadline to Close Sales | January 24, 2020 |

9.      The Sale Motions also propose, among other things, Bid Protections for yet-to-be-chosen Designated Stalking Horse Bidder(s) in the amount of a 3% of the Purchase Price break-up fee and 1.5% of the Purchase Price expense reimbursement.  The Sale Motions contemplate the

---

[5] This is a proposed milestone from the Debtors' DIP Motion.

ability of the Debtors' secured lenders to credit bid notwithstanding the Committee's proposed deadline to commence a challenge to the nature, extent and validity of the Debtors' prepetition lenders' liens of February 17, 2020 (which deadline may be extended pursuant to any final order approving the Debtors' proposed postpetition financing facility or the agreement of the parties).

10.     The Bidding Procedures for the Sale Motions are set for hearing on January 3, 2020 at 10:00 a.m. (ET) (the "Bidding Procedures Hearing") with objections due to be filed by December 27, 2019 at 4:00 p.m. (ET).

11.     On December 18, 2019, the Office of the United States Trustee for the District of Delaware appointed the Committee, consisting of the following three members: (i) Comdata, Inc.; (ii) Transport Enterprise Leasing, LLC; and (iii) Master Fleet National LLC.  That same day, the Committee selected Cooley LLP as its proposed counsel, Potter Anderson & Corroon LLP as its proposed Delaware counsel, and Dundon Advisers LLC as its proposed financial advisor in these Chapter 11 Cases.

## LIMITED OBJECTION

12.     The paramount goal in any proposed sale of estate property is to maximize the proceeds received by the estate.  *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2008).  To further this purpose, bidding procedures must "facilitate an open and fair public sale designed to maximize value for the estate."  *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); *see also Cybergenics*, 330 F.3d at 573 (stating that the debtor has a fiduciary duty to maximize the value of the bankruptcy estate); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 210 (3d Cir. 2010) (affirming a bankruptcy court's denial of a break-up fee that was not

necessary to preserve the value of the estate, noting that the debtor has a fiduciary duty to maximize the value of the estate).

**A. The Sale Milestones Should Be Extended**

13.     At this time, and based on the information received and analyzed to date, the proposed sale milestones appear too tight and should be extended.  At minimum, the sale hearing should be scheduled for the omnibus hearing on January 30, 2020, with bids due on January 24, 2020.

14.     The proposed sale milestones should be extended to permit potential purchasers additional time to diligence and bid on the Debtors' assets, including both the proposed going-concern sale of the Taylor Assets and the liquidation of the Remaining Assets, and for the Committee to get up to speed on these Chapter 11 Cases, evaluate the assets and assist the Debtors with marketing the assets for the benefit of all creditors.  *See, e.g.*, *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Nov. 4, 2014), Hr'g Tr. at 20:16-20 (holding that "the proposed timelines must be stretched…to allow for sufficient time for any interested party to develop an alternative transaction…and the…committee to…get up to speed.").  The Sale Motions are largely devoid of detailed information related to the prepetition marketing of the Debtors' assets.  Moreover, the Debtors have not hired an investment banker and due to the Debtors' limited operations, a short extension does not materially change their cash needs.  Accordingly, the typical justifications for an extraordinarily short timeline—the proverbial "melting ice cube" or a thorough and lengthy prepetition marketing of the debtors' assets, or an inability to fund even a short delay— do not apply here, and the proposed January 24 deadline for sales to close (a mere three weeks from the hearing on the Bid Procedures) is facially unreasonable.

15.     There is even less reason for such a short sale timeline for the Remaining Assets. The Debtors state in the motion that more than 30 parties were contacted during the prepetition marketing process, but leave out most other detail with respect to this prepetition marketing process.  Notably, the Committee believes that the Celadon Mexicana assets could potentially be sold as a going-concern and significantly value may be lost through a quick liquidation sale. Similarly, certain of the Debtors' trailers are customized, requiring more time to market, and significant value may be lost through a fire sale liquidation.

**B.  The Bid Protections Should Not Be Granted Without Stalking Horse Bidder(s)**

16.     The proposed Bid Protections should not be pre-approved by the Court without Designated Stalking Horse Bidder(s) because, among other things, the Debtors cannot demonstrate that the award of the Bid Protections are necessary to preserve the value of the Debtors' estates. *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999).  The Debtors propose Bid Protections in the amount of a break-up fee equal to 3% of the Purchase Price *plus* expense reimbursement equal to 1.5% of the Purchase Price.  The Committee does not oppose the grant of appropriate and reasonable Bid Protections that will set a floor for an auction and maximize value in these Chapter 11 Cases.  However, if the Debtors receive the authority to grant Bid Protections, the Bid Procedures Order must be revised to require consultation with the Consultation Parties and a short notice and objection period to allow the Committee, and other parties-in-interest, time to review the proposed Bid Protections and be heard, on an expedited basis, in connection with any objection thereto.  The Bid Procedures Order should also make clear that, for the avoidance of doubt, "Purchase Price", as it appears in the Bid Procedures Order, means the purchase price associated with the Designated Stalking Horse Bid, and not the final purchase price of the assets.

17.    Finally, if one of the Debtors' secured lenders seek stalking horse status and seek to credit bid its debt, the secured lender should not be permitted to receive Bid Protections because they are not necessary to preserve the value of the Debtors' estates.  *See, e.g.*, *Reliant Energy Channelview LP*, 594 F.3d at 210.  These lenders do not need any additional incentive to protect their rights in these Chapter 11 Cases.  Additionally, the lenders should know the Debtors and their operations intimately and therefore, they need less diligence (both time and expense) than other potential bidders because they would have completed significant diligence into the Debtors when entering into their loan agreements.  As they are already familiar with the Debtors, at a minimum, no expense reimbursement is warranted for a secured lender's bid.

**C.  Credit Bidding Must Be Tailored To Allow For A Fair Process**

18.    The Court must ensure that, if one of the Debtors' secured lenders seeks to credit bid, the approved process for credit bidding is fair to all parties-in-interest to reduce the risk of bid-chilling.  Therefore, the Bid Procedures Order should specifically provide that any party's right to challenge a lender's credit bid "for cause" under section 363(k) is preserved.  11 U.S.C. § 363(k).  Second, a lender who decides to credit bid must make its election at or prior to the Bid Deadline and if it determines to credit bid, cannot then be a Consultation Party.  Allowing a secured lender to be consulted on all other bids and be a bidder would unfairly prejudice the auction process.  *See In re Elk Petroleum, Inc.*, No. 19-11157(LSS) (Bankr. D. Del. July 30, 2019), Hr'g Tr. 38:4-39:17 (holding that a secured lender must announce its intention to bid in advance of the auction and cannot then be a consultation party, and stating that it is part of the fairness of the process, knowing who the potential other bidders are).

19.    Finally, in the event that the relief requested by the Debtors in the DIP Motion is approved on a final basis in its current form—and the Committee requests that it not be for the

reasons set forth in its objection to the same—the Committee will have sixty days from its appointment, or until February 17, 2020, to bring a challenge to the nature, extent and validity of the Debtors' prepetition lenders' liens.  Under the current schedule proposed by the Debtors in the Sale Motions, all sales must ***close*** by January 24, 2020—three weeks before the Committee's challenge deadline.  While the Committee will work diligently to complete its investigation into the liens of the Debtors' prepetition lenders as soon as possible, the Committee's ability to challenge the secured lenders' liens must be fully preserved and not cut short in any way. Accordingly, the Committee proposes the following language be added to the Bid Procedures Order and any sale order:

> The failure of the Official Committee of Unsecured Creditors (the "Committee") to object to a credit bid of any prepetition debt held by a prepetition lender or other secured party, or the Court's approval of any such credit bid, shall not (a) prejudice or impair the rights of the Committee to challenge the nature, extent, validity, priority, perfection or amount of the underlying liens, security interests and claims, or (b) release such lender from any causes of action which can be brought by or on behalf of the Debtors' estates. The Court shall retain the ability to fashion an appropriate remedy in the event of a successful challenge, including without limitation that the purchaser (or, in the event the purchaser is a shell or inadequately capitalized company, any subsequent transferee or primary beneficiary thereof) shall have to remit cash equal to the purchase price allocable to the successfully challenged liens, security interests or claims.

20.     For the same reason, the prepetition lenders should not receive payment from the proceeds of any Sale until such time as their liens are determined to be valid and in the order of priority alleged.

**D.  Miscellaneous Objections**

21.     In addition to the foregoing, the Committee raises the following additional objections to the Sale Motions:

a. The Committee should be a Consultation Party with respect to all aspects of the Bidding Procedures and sale processes, including with respect to any withheld diligence materials – Bid Procedures § 4;

b. The Bidding Procedures should be revised to permit parties to reopen the Auction "for cause" and no party should be required to waive that right prior to the Auction – Bid Procedures § 6(xiv);

c. The Bidding Procedures should make clear that the Debtors are not selling any causes of actions against insiders of the Debtors.  Moreover, the Bidding Procedures should clarify that no avoidance actions are proposed to be sold through the Sale Motions; and

d. The Bid Procedures Order and any sale order must ensure that the Debtors' estate has the right to access employees and records in connection with any winddown, liquidation, or litigation related to the Debtors' assets.

e. The Bid Procedures Order should conform with the motion and clarify that the Bid Procedures do not apply to owned real property.

22.    The Committee anticipates engaging with the Debtors on these issues in advance of the Bidding Procedures Hearing, and hopes to narrow or resolve most, if not all, of these objections.

## <u>RESERVATION OF RIGHTS</u>

23.    The Committee reserves all rights with respect to the Sale Motions, including the right to supplement this Objection with information, objections, and legal arguments based on the results of its review and investigation, which is ongoing.  The Committee expressly reserves its rights to raise additional and further objections at or prior to the Bidding Procedures Hearing or at any subsequent hearing to approve any Sale(s).

*[Remainder of Page Left Intentionally Blank]*

**WHEREFORE**, the Committee respectfully requests that any order approving the Bidding

Procedures and Sale(s) be revised and consistent with this Objection, and for such other and further

relief as the Court deems just and proper.

Dated: December 27, 2019
       Wilmington, Delaware

Respectfully submitted,

*/s/ Aaron H. Stulman*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801-3700
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  csamis@potteranderson.com
        kgood@potteranderson.com
        astulman@potteranderson.com

– and –

Seth Van Aalten Esq.
Robert Winning, Esq.
Sarah Carnes, Esq.
COOLEY LLP
55 Hudson Yards
New York, New York 10001-2157
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275
Email:   svanaalten@cooley.com
         rwinning@cooley.com
         scarnes@cooley.com

*Proposed Counsel for the Official Committee of*
*Unsecured Creditors*

IMPAC - 6526377v.1  12/27/2019 3:36 PM