**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
: 
In re: : Chapter 11
 :
    CELADON GROUP, INC., *et al.*,[1] : Case No. 19-12606 (KBO)
 :
    Debtors. : (Jointly Administered)
 :
---------------------------------------------------------------x  **Re: D.I.: 79, 179, 198**

**ORDER: (I)(A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS, (B) PERMITTING DEBTORS TO DESIGNATE STALKING HORSE PURCHASER(S) AND GRANT BID PROTECTIONS, (C) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OF ASSETS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AND (E) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF CERTAIN OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

This matter coming before the court upon the *Motion of the Debtors for the Entry of Orders: (I)(A) Approving Bidding Procedures and Bid Protections, (B) Permitting Debtors to Designate Stalking Horse Purchaser(s) and Grant Bid Protections, (C) Scheduling a Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice of Sale, and (E) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets of Certain of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

*(B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Motion")[2] for entry of an order (this "Order") approving, among other things, the Bidding Procedures and Bid Protections, scheduling the Auction, and scheduling a hearing to consider the sale of substantially all the Remaining Assets, pursuant to and in accordance with the Bidding Procedures, and authorizing the Debtors to designate stalking horse purchaser(s); all as further described in the Motion; and upon consideration of the First Day Declaration and the record of these chapter 11 cases; it is hereby:

**FOUND AND DETERMINED THAT:**

**I.     Determination with Respect to the Findings of Fact and Conclusions of Law**

A.     The findings of fact and conclusions of law set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at the hearing to consider the Motion are hereby incorporated, to the extent they are not inconsistent with this Order.

**II.    Jurisdiction, Final Order, and Statutory Predicates**

B.     This Court has jurisdiction over the Debtors, their estates, property of their estates and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

C. The statutory and legal predicates for the relief requested in this Motion are sections 105(a), 363(b), (f), and (m), 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9008, and 9014, and Local Rules 2002-1 and 6004-1.

D. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth in this Order.

### III. Notice of Proposed Bidding Procedures, Assumption Procedures, and Sale of the Remaining Assets

E. Actual written notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein have been afforded to all known interested persons and entities, including, but not limited to, the following parties: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Remaining Assets during the past twenty-four (24) months; (b) all entities known to have asserted any interest in or upon any of the Remaining Assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to a Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to the Committee; (g) counsel to the DIP Agent; (h) the Office of the United States Attorney General for the District of Delaware; (i) the Internal Revenue Service; (j) the U.S. Department of Justice; (k) the offices of the attorneys general for the states in which the Debtors operate; (l) all of the Debtors' insurers; (m) all parties entitled to notice

pursuant to Rule 2002 of the Bankruptcy Rules or Local Rule 2002-1(B); and (o) other persons reasonably requesting notice of a potential purchase of the Remaining Assets (collectively, the "Notice Parties").

F.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Bidding Procedures, and Assumption Procedures has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and Rules 2002-1, 6004-1, and 9014-1 of the Local Rules.  The notice provided was adequate, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Bidding Procedures, or Assumption Procedures is necessary or required, other than as set forth in this Order.

G.      The Notice of Auction and Sale Hearing and Notice of Potential Assumption are reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale of the Remaining Assets, including, without limitation: (i) the date, time, and place of the Auction, if any; (ii) the Bidding Procedures governing participation in the Auction; (iii) the deadline for filing objections to the sale of the Remaining Assets; (iv) the date, time, and place of the hearing to consider the sale of the Remaining Assets; (v) instructions for obtaining copies of the Asset Purchase Agreement; (vi) clearly identifying the sale of the Remaining Assets is free and clear of any and all liens, claims, interest, and other encumbrances, other than as set forth in the Asset Purchase Agreement; and (v) the proposed assumption and assignment of certain contracts and leases, and the procedures and deadlines for objecting to any assumption and assignment.

H.      The Assumption Procedures will provide that any Designated Stalking Horse Bidder, any Qualified Bidder, and each counterparty to a potentially assumed executory contract or unexpired lease with proper notice of the potential assumption and assignment of any executory

contract or unexpired lease and any cure costs relating thereto, and the procedures set forth therein with regard to any such cure costs satisfy section 365 of the Bankruptcy Code and Rule 6006 of the Bankruptcy Rules.

I.  The Debtors' disclosures concerning the Motion, Bidding Procedures, and Assumption Procedures were good, complete, and adequate.

J.  Notice of the Motion, Bidding Procedures, and Assumption Procedures was adequate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Rules 2002, 6004, and 6006 of the Bankruptcy Rules, and Rules 2202-1 and 6004-1 of the Local Rules.

**IV.  The Bid Procedures, and Bid Protections**

K.  The terms of the Bidding Procedures and Bid Protections are reasonably calculated to induce a Potential Bidder to seek Designated Stalking Horse Bidder status and are within the market standards.

L.  The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Remaining Assets.

M.  Subject to the expiration of the Designation Notice Period (defined below) or the resolution by the Court of any timely filed objection to the Debtors' designation of a Designated Stalking Horse Bidder, the Debtors, in consultation with the Official Committee of Unsecured Creditors, the DIP Agent, and MidCap Funding IV Trust (collectively, the "Consultation Parties"), will be deemed to have demonstrated that the Bid Protections in the form of (i) a break-up fee up to the amount of 3% of the Purchase Price; (ii) expense reimbursement in an amount up to 1.5% of the Purchase Price; and (iii) an initial overbid at least greater than 0.5% of the initial bid amount or proposed Purchase Price plus break-up fee plus expense reimbursement, are actual and

necessary costs and expenses of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, and are of substantial benefit to the Debtors' estates by inducing any Designated Stalking Horse Bidder to enter into the Asset Purchase Agreement and subject its offer to higher and better bids, thereby ensuring the Debtors receive the highest or otherwise best possible bid for the Remaining Assets.  Upon such designation, the Debtors will file a notice of their intent to designate a Designated Stalking Horse Bidder, whereupon parties will have five (5) business days to object (the "Designation Notice Period").  If no objection is filed, the designation of the Designated Stalking Horse Bidder shall be deemed approved without further order of the Court.  If a party files an objection to the designation, the Court will schedule an expedited hearing to resolve such objection.  Notwithstanding anything herein to the contrary, the findings of fact and conclusions of law in paragraphs M, 3, 22, and 23 shall only become effective upon either (i) the expiration of the Designation Notice Period or (ii) entry of an order by the Court resolving a timely filed objection to such designation.

N.      Good and sufficient business reasons exist for this Court to: (i) approve the Bidding Procedures, in the form attached to this Order as **Exhibit 2**; (ii) schedule an auction and hearing to consider the results of the auction and sale of the Remaining Assets; and (iii) establish the Assumption Procedures, to fix cure amounts to be paid pursuant to section 365 of the Bankruptcy Code, in connection with the assumption and assignment of executory contracts and unexpired leases.

O.      Good and sufficient business reasons exist for this Court to approve the De Minimis Asset Sale Procedures.

P.      The Debtors have articulated good and sufficient reasons for this Court to approve the Bidding Procedures and Assumption Procedures.

Q.  The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.  The relief sought in this Motion is GRANTED and APPROVED to the extent set forth in this Order.

2.  All objections to the relief granted in this Order that have not been withdrawn, waived, or settled as announced to the Court at the hearing to consider the Motion or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or otherwise have been satisfied or adequately provided for pursuant to this Order.

3.  Subject to the expiration of the Designation Notice Period or the resolution by the Court of any timely filed objection to the Debtors' designation of a Designated Stalking Horse Bidder, the Debtors, in consultation with the Consultation Parties, are authorized to designate one or more Designated Stalking Horse Bidders and grant Bid Protections, without further order of this Court.  Upon designating a Potential Bidder as a Designated Stalking Horse Bidder, the Debtors shall file a notice identifying the Designated Stalking Horse Bidder, identifying the Remaining Assets that are subject to such Designated Stalking Horse Bidder's offer, and attach a copy of such Designated Stalking Horse Bidder's Asset Purchase Agreement.

4.  The Debtors' template Asset Purchase Agreement, substantially in the form attached to this Order as **Exhibit 1**, is approved.

5.  The Designated Stalking Horse Bidder, if any is designated, shall constitute a Qualified Bidder for all purposes and in all respects under the Bidding Procedures.

6.  The Bidding Procedures, substantially in the form attached to this Order as **Exhibit 2**, are approved in their entirety and are incorporated in this Order as if fully set forth at

length in this paragraph; and, the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

7. As set forth in the Bidding Procedures, the deadline for submitting bids for the Remaining Assets is **January 20, 2020 at 4:00 p.m. (prevailing Eastern time)** (the "Bid Deadline"); provided, however, no bid shall be deemed a Qualified Bid until such time as the Debtors determine, in their business judgment, that such bid meets the requirements set forth in the Bidding Procedures.

8. If the Debtors timely receive one or more Qualified Bids (other than the bid of a Designated Stalking Horse Bidder), the Debtors shall conduct an auction (the "Auction") on **January 22, 2020 at 10:00 a.m. (prevailing Eastern time)** at DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020-1104 (or at such other location as the Debtors may designate upon written notice to all parties entitled to participate in the auction under the Bidding Procedures); provided, however, if no other Qualified Bid is received by the Bid Deadline (other than a Designated Stalking Horse Bidder's bid), then the Debtors shall not be required to conduct an auction and may promptly seek this Court's approval of the sale of the Remaining Assets to any Designated Stalking Horse Bidder.

9. Each Qualified Bidder participating in the Auction shall be required to certify it has not engaged in any collusion with respect to the potential purchase of the Remaining Assets.

10. At such time as the Debtors determine the Successful Bid(s) in accordance with the Bidding Procedures, the Debtors shall file on this Court's docket in these Chapter 11 Cases a notice disclosing the identity of the Successful Bidder(s) and, if the Debtors deem there to be one, the identity of the Back-up Bidder(s) (the "Successful Bidder Notice").

11. The hearing to consider approval of the sale of the Remaining Assets (the "Sale Hearing") shall be conducted on **January 30, 2020 at 2:30 p.m. (prevailing Eastern time)** before The Honorable Karen B. Owens, United States Bankruptcy Judge for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19801; provided, that, the Sale Hearing may be adjourned by this Court or by the Debtors from time to time without further notice other than by announcement in open court or through the filing of a notice on this Court's docket.

12. The deadline to object to the remaining relief requested in the Motion, including entry of the Sale Order, is **January 23, 2020 at 4:00 p.m. (prevailing Eastern time)** (the "Sale Objection Deadline").

13. Any party opposing the remaining relief sought in the Motion must file an objection prior to the Sale Objection Deadline, and such objection must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds for objecting; and (iv) filed with this Court and served **so as to be actually received** no later than the Sale Objection Deadline by the Objection Notice Parties.

14. Not later than three (3) business days after entry of this Order, the Debtors shall cause: (a) notice substantially in the form attached to this Order as **Exhibit 3** (the "Notice of Auction and Sale Hearing") and a copy of this Order to be sent by first-class mail, postage prepaid, to the Notice Parties; and (b) electronic notice of the Motion, this Order, and the Notice of Auction and Sale Hearing to be posted on (i) this Court's website (http://www.deb.uscourts.gov) and (ii) the case website maintained by the Debtors' claims and noticing agent, KCC, (http://www.kccllc.net/Celadon).

9

15. Not later than three (3) business days after entry of this Order, the Debtors shall serve by first-class mail, postage prepaid, a notice of potential assumption, assignment, and/or transfer of executory contracts and unexpired leases to which the Sellers are party, substantially in the form attached to this Order as **Exhibit 4** (the "Notice of Potential Assumption") on all non-Debtor parties to the executory contracts and unexpired leases.

16. Upon filing of the Successful Bidder Notice with this Court, the Debtors shall serve the Successful Bidder Notice on all parties that received service of the Notice of Potential Assumption.

17. Unless the non-Debtor party to an executory contract or unexpired lease files an objection to (a) its cure amount or (b) the proposed assumption, assignment, and/or transfer of such executory contract or unexpired lease to any Designated Stalking Horse Bidder or to any Successful Bidder by **January 23, 2020 at 4:00 p.m. (prevailing Eastern time)** (the "Assumption Objection Deadline") and serves such objection **so as to be actually received** by the Objection Notice Parties by no later than the Assumption Objection Deadline, such non-Debtor party shall be (x) forever barred from objecting to the cure amount and from asserting against the Debtors, any Designated Stalking Horse Bidder, or any Successful Bidder any additional cure or other amounts with respect to such executory contract or unexpired lease, and any Designated Stalking Horse Bidder and any Successful Bidder shall be entitled to rely upon such cure amounts and (y) deemed to have consented to the assumption, assignment, and/or transfer of such executory contract or unexpired lease to any Designated Stalking Horse Bidder or Successful Bidder and shall be forever barred and estopped from asserting or claiming against any party that any additional amounts are due, defaults exist, conditions to assumption, assignment, and/or transfer

must be satisfied, or that any right or benefit under such executory contract or unexpired lease cannot or will not be available to any Designated Stalking Horse Bidder or Successful Bidder.

18. If a contract counterparty files a Contract Objection in a manner consistent with the Assumption Procedures, and the Debtor and the contract counterparty, in consultation with any Designated Stalking Horse Bidder or Successful Bidder, are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, in consultation with the Committee and the Successful Bidder(s), or such other date determined by this Court. With respect to any Contract Objection that remains outstanding as of the Closing, the maximum claimed cure amount will be deposited into escrow to support the payment of the final cure amount at such time as the Contract Objection is resolved.

19. No later than five (5) calendar days prior to the Closing (as defined in the eventual, finalized asset purchase agreement), the Debtors shall serve a notice, substantially in the form attached to this Order as **Exhibit 5**, identifying the executory contracts and unexpired leases that will be assumed and assigned to any Designated Stalking Horse Bidder or Successful Bidder, as applicable.

20. Any Designated Stalking Horse Bidder or Successful Bidder, as applicable, may determine to exclude any executory contract or unexpired lease from the list of Remaining Assets, in accordance with the applicable asset purchase agreement; provided, that, if any executory contracts or unexpired leases are excluded from the applicable list of Remaining Assets, the Debtors shall notify the non-Debtor party or parties to any such executory contracts or unexpired leases of such exclusion, by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

21. The form of notices attached to this Order as **Exhibit 3**, **Exhibit 4**, and **Exhibit 5** are approved in their entirety.

22. Subject to the expiration of the Designation Notice Period or the resolution by the Court of any timely filed objection to the Debtors' designation of a Designated Stalking Horse Bidder, the Bid Protections, as set forth in the Bidding Procedures, are expressly approved, and the Debtors are authorized and directed to promptly pay, as they become due, any amounts owed to the Designated Stalking Horse Bidder, if any, on account of such Bid Protections, in accordance with the Bidding Procedures.

23. Subject to the expiration of the Designation Notice Period or the resolution by the Court of any timely filed objection to the Debtors' designation of a Designated Stalking Horse Bidder, the obligation of the Debtors to pay the Bid Protections shall: (a) constitute administrative expense claims against each of the applicable Debtor's estate; (b) be entitled to administrative expense priority status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code: (c) survive the termination of the Asset Purchase Agreement; and (d) be paid by the applicable Debtors to any Designated Stalking Horse Bidder in cash, on the terms of such Designated Stalking Horse Bidder's proposed asset purchase agreement.

24. **Unless the Court orders otherwise, failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the sale of the Remaining Assets, and such failure shall be deemed to constitute consent to entry of the Sale Order and consummation of the sale of the Remaining Assets**.

25. The De Minimis Asset Sale Procedures are APPROVED, as set forth below:

   (a) With regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of

related buyers with an aggregate selling price[3] equal to or less than $100,000:

    i. The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party; and

    ii. Any such transaction(s) shall be free and clear of all liens, with such liens attaching only to the sale or transfer proceeds, if any, with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer.

    iii. The Debtors shall give prior written notice of each sale (the "De Minimis Sale Notice") to (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors, if one is appointed; (c) counsel to Blue Torch Finance, LLC; (d) counsel to Luminus Energy Partners Master Fund, Ltd.; (e) counsel to MidCap Funding IV Trust as revolving agent under the Credit and Security Agreement dated as of July 31, 2019; and (f) any known affected creditor asserting a lien on the De Minimis Asset subject to sale (collectively, the "De Minimis Notice Parties").

    iv. The content of the De Minimis Sale Notice shall consist of (a) identification of the De Minimis Assets being sold or transferred, (b) identification of the purchaser or transferee of the assets and their relationship (if any) to the Debtors, (c) the selling price, (d) the significant terms of the sale or transfer agreement, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators, and (e) the intended use of the proceeds from such sale or transfer;

    v. If no written objections from the De Minimis Notice Parties are filed with the Court within seven (7) days after service of such De Minimis Sale Notice, then the Debtors are authorized to immediately consummate such sale or transfer;

    vi. If any De Minimis Notice Party files a written objection to any such sale or transfer with the Court within seven (7) days after service of such De Minimis Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing.

---

[3] For purposes of these De Minimis Asset Sale Procedures, "selling price" shall refer to the gross sale price or value set forth in the applicable purchase and sale agreement.

EAST\171261517.7

26. The Debtors shall provide a written report or reports, within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales were consummated for the relevant quarter), concerning any such sales or transfers made in accordance with the relief requested in this Motion (including the names of the purchasing parties and the types of amounts of the sales) to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

27. The Debtors (including any successors in interest), the Seller, and the Buyer (collectively, the "Parties") shall retain and preserve all books, records, emails, and other documents relating to the Debtors' business prior to the bankruptcy filing that are in the possession of each Party immediately following the Closing Date, and shall provide each Party and the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") with reasonable access to all such documents.  No Party shall destroy or otherwise abandon any such documents or records without providing the other Parties and the SEC and the DOJ at least 30 days' prior written notice of its intent to abandon or destroy such materials, and a reasonable opportunity to obtain possession thereof.  Such notice shall be provided via email to: Amy S. Cotter at cottera@sec.gov and Jaclyn J. Janssen at janssenj@sec.gov; and lawrence.atkinson@usdoj.gov, nlinder@usdoj.gov, and kyle.maurer@usdoj.gov.

28. Notwithstanding anything to the contrary in this Order or the De Minimis Asset Sale Procedures, none of the Debtors' insurance policies and/or any related agreements shall be sold, assigned, or otherwise transferred pursuant to any De Minimis Asset Sale except in compliance with the terms of such insurance policies, any related agreements, and/or applicable non-bankruptcy law.

29. The requirements of Bankruptcy Rule 6003(b) are satisfied.

30. The requirements of Bankruptcy Rule 6004(a) are waived.

31. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

32. The Debtors are hereby authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

33. This Court retains jurisdiction over any and all matters related to or arising from the interpretation or implementation of this Order.

**Dated: January 6th, 2020**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

15

EAST\171261517.7