# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                                            :
In re:                                                      :  Chapter 11
                                                            :
    CELADON GROUP, INC., et al.,[1]                         :  Case No. 19-12606 (KBO)
                                                            :
    Debtors.                                                :  (Jointly Administered)
                                                            :
------------------------------------------------------------x
```

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
## (I) APPROVING THE PRIVATE SALE OF CERTAIN NONRESIDENTIAL REAL PROPERTY LOCATED IN AYR, ONTARIO, CANADA FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
## AND (II) GRANTING OTHER RELATED RELIEF

Celadon Group, Inc. and its affiliated debtors (collectively, the "Debtors"), by and through their counsel, DLA Piper LLP (US), hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) approving the private sale of certain non-residential real property located at 2616 Cedar Creek Road, Ayr, Ontario, Canada (the "Premises")[2] as contemplated by that certain Agreement of Purchase and Sale (the "Purchase Agreement"), attached as **Exhibit 1** to the Proposed Order, between Debtor

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

[2] In accordance with the Agreement of Purchase and Sale, a copy of which is attached to the Proposed Order as **Exhibit 1**, the legal description of the Premises is: PT LT 30 CON 11 NORTH DUMFRIES; PT RDAL BTN CON 10 & 11 NORTH DUMFRIES CLOSED BY 58G710; AS IN WS707023, EXCEPT PT 1, 58EX470 TOWNSHIP OF NORTH DUMFRIES.

Celadon Group, Inc. on behalf of Hyndman Transport Limited (the "Seller") and Wyndham Street Investments Inc. (the "Purchaser"), free and clear of claims, liens, encumbrances and interests (except as set forth in the Purchase Agreement), and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The proposed sale of the Premises has been marketed throughout the Debtors' chapter 11 cases as part of the Debtors' Remaining Assets (as defined in the Remaining Assets Bidding Procedures Motion (defined below)), subject to the *Motion of the Debtors for Orders: (I)(A) Approving Bidding Procedures and Bid Protections, (B) Permitting Debtors to Designate Stalking Horse Purchaser(s) and Grant Bid Protections, (C) Scheduling a Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice of Sale, and (E) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets of Certain of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 79] (the "Remaining Assets Bidding Procedures Motion"), which was approved in part by the bidding procedures order entered [D.I. 219]. The marketing process involved extensive business discussions, including telephone calls, in-person meeting between and among senior management, and numerous parties' business and legal teams and various advisors. As a result of these marketing efforts, the Debtors received several indications of interest or offers to purchase the Premises, including the indication of interest and offer that the Debtors received from the Purchaser. The Purchaser's offer was superior to the other expressions of interest that the Debtors received and was at or above the Debtors' expectations of

2

EAST\171528784.3

value should the Debtors subject the Premises to the Auction (as defined below). Thus, the Debtors proceeded with negotiating the Purchase Agreement.

2. As a result of substantial arm's length negotiations between the Purchaser and the Debtors, the Purchaser agreed to purchase the Premises for Canadian ("CAN") $12,000,000[3] (the "Purchase Price") subject to the Purchase Agreement. The negotiations also resulted in a transaction structure that could close promptly on terms favorable to the Debtors.

3. While the Premises could be put up for sale subject to the auction contemplated by the Remaining Bidding Procedures Motion, which is currently scheduled to be held January 22, 2020 (the "Auction"), as stated above, the terms offered by the Purchaser are materially superior to the terms that the Debtors could hope to achieve at the Auction.

4. Given that (a) the Purchaser can consummate the private sale transaction sooner than if the Debtors subjected the Premises to the Auction with the other Remaining Assets, (b) thus far, other potential bids and indications of interest in connection with the marketing of the Premises have not exhibited value or interest comparable to the proposed sale, and (c) nothing in the Purchase Agreement prohibits the Debtors from pursuing or consummating any alternative transaction that, in the Debtors' business judgement will maximize the value of their estates[4] (subject to the Break-Up Fee, defined below), the Debtors believe, in their business judgment, and in consultation with the Consultation Parties,[5] that it is unlikely the Auction will lead to a higher

---

[3] Approximately US$9,188,400 as of the prevailing international exchange rates as of the date of filing this Motion.

[4] The Debtors reserve the right to exercise their fiduciary duties and terminate the Purchase Agreement should another party submit a bona fide binding offer and good faith deposit to purchase the Premises for higher or otherwise better consideration.

[5] In accordance with the *Order: (I)(A) Approving Bidding Procedures and Bid Protections, (B) Permitting Debtors to Designate Stalking Horse Purchaser(s) and Grant Bid Protections, (C) Scheduling a Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice of Sale, and (E) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets of Certain of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory*

or otherwise better bid for the Premises. Accordingly, the Debtors seek to sell the Premises to the Purchaser, pursuant to a private sale, free and clear of all liens, claims, encumbrances, and other interests.

5. For these reasons, and as set forth more fully below, the relief sought by this Motion should be granted.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

7. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue of these chapter 11 cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested in this Motion are sections 105 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1(b)

---

*Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 219], the Consultation Parties are: the Official Committee of Unsecured Creditors (the "Committee"), the DIP Agent, and MidCap Funding IV Trust.

4

**BACKGROUND**

10. Celadon Group, Inc. and its affiliated debtors are one of the largest North American truckload freight transportation carriers, providing point-to-point shipping, and specifically, long haul, regional, local, dedicated, intermodal, temperature-protect, and expedited freight services across the United States, Canada and Mexico. Amid industry-wide headwinds, including falling freight rates, the Debtors began to experience liquidity constraints and worked with their key stakeholders to identify a solution that would maximize enterprise value for the benefit of all stakeholders. On December 8, 2019 (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

11. The Debtors continue to be in possession of their assets and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed in the Debtors' chapter 11 cases. On December 18, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [D.I. 111] (the "Committee"). The U.S. Trustee has set January 22, 2020 at 2:30 p.m. (ET) for the meeting of creditors under section 341 of the Bankruptcy Code.

12. Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Kathryn Wouters in Support of Chapter 11 Filings and First Day Pleadings* [D.I. 3] (the "First Day Declaration"),[6] filed with this Court on the Petition Date, which is fully incorporated into this Motion by reference.

---

[6] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

5

## RELIEF REQUESTED

13. By this Motion, the Debtors seek entry of an order, substantially in the form of the Proposed Order, attached hereto as **Exhibit A**, pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 6004-1(b), (i) approving the private sale of the Premises to the Purchaser in accordance with the Purchase Agreement, free and clear of liens, claims, encumbrances and other interests, and (ii) granting related relief.

## BASIS FOR RELIEF

**A. The Purchase Agreement is Typical, Customary, and Reasonable, and Entering into the Purchase Agreement is an Exercise of the Debtors' Business Judgment.**

14. The Debtors believe that the terms of the Purchase Agreement are typical, customary, and reasonable under the circumstances, and should be entered into in the sound exercise of the Debtors' business judgment.

15. Pursuant to Bankruptcy Rule 6004(f)(1), sales of property may be by private sale or public auction. The paramount goal of either process is to maximize the proceeds of such sale and the recovery for the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting that the debtor "had a fiduciary duty to protect and maximize the estate's assets."); *see also CFTC v. Weintraub*, 471 U.S. 343, 352 (1985) (same); *Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 263 (5th Cir. 2010) (same).

16. In accordance with Local Rule 6004-1, the Purchase Agreement, in summary, provides as follows:[7]

   a. <u>Sale of Premises</u>. The Debtors are seeking approval for the sale of the Premises to the Purchaser by private sale for the purchase price of CAN$12,000,000, and upon the terms and conditions set forth in the Purchase Agreement.

---

[7] This summary is qualified in its entirety by reference to the provisions of the Purchase Agreement itself. In the event of any inconsistencies between this summary and the Purchase Agreement, the terms of the Purchase Agreement shall govern.

b. <u>Free of Any and All Encumbrances</u>.  The sale will be free and clear of all claims, liens, encumbrances and interests, with such claims, liens, encumbrances and interests to attach to the net proceeds of the private sale enjoying the same extent and priority as on the Premises.

c. <u>Included Assets</u>.  The private sale of the Premises includes the real property as described above, as well as all chattels related to the Premises, including all pit related items, racking and shelving in parts rooms, shop compressor, network, security and cabling and IT related items, office furniture, gate and door controllers (including the keyless fob system) in "as is" condition.

d. <u>Excluded Assets</u>.  The Premises will not be sold with the overhead crane located in the shop area (the Kone Krane) or the building and pylon signage.  Equipment that has been rented by the Debtors is not included in the private sale.

e. <u>Due Diligence Period</u>.  The Buyer has five (5) days from the execution of the Purchase Agreement to conduct an inspection of the Premises at its own expense.

f. <u>Realty Tax Refunds</u>.  All right, title and benefit to any realty tax and reassessments and any rebates, refunds or reassessment of realty taxes for the Premises prior to the closing of the private sale shall remain property of the Seller ("<u>Realty Tax Refunds</u>").  The Purchaser will pay to the Seller, promptly after the completion of any successful assessment appeal, the net proceeds of any rebate, refund or reassessment of realty taxes for the Premises received by the Purchaser in respect of any period prior to the closing of the private sale.

g. <u>Taxes and Fees</u>.  The Purchaser will be responsible for all registration fees and land transfer taxes and sales taxes payable in connection with the private sale.

h. <u>Real Estate Agent Fee</u>.  The broker acting on behalf of the Purchaser is CBRE Limited Inc. (the "<u>Real Estate Agent</u>"), and upon closing of the private sale transaction, the Seller shall pay one percent (1%) of the Purchase Price to the Broker ("<u>Real Estate Fee</u>").

i. <u>Indemnification</u>.  The Purchase Agreement does not provide for indemnity by either party.

j. <u>Consent to Jurisdiction</u>.  The Purchaser will be deemed to have consented to the jurisdiction of the United States Bankruptcy Court for the District of Delaware, and have waived any and all rights to a jury trial in connection with any and all disputes relating to, arising from, or connected with the purchase and sale of the Premises, and the construction or enforcement of the Purchase Agreement.

EAST\171528784.3

17. Pursuant to Local Rule 6004-1, a copy of the Proposed Order is attached to this Motion as **Exhibit A**, and the executed Purchase Agreement is attached to the Proposed Order as **Exhibit 1**. In compliance with Local Rule 6004-1(b)(iv), the Debtors further state:

   a. <u>Sale to insider</u>. The Purchaser is not an insider of the Debtors, within the meaning of section 101(31) of the Bankruptcy Code.

   b. <u>Agreements with Management</u>. The Purchaser has not discussed or entered into any agreements with Debtors' management or key employees regarding future compensation or employment.

   c. <u>Releases</u>. The Purchase Agreement provides for the release and discharge of the Seller and its successors and assigns, from every claim of any kind that the Purchaser may make, suffer, sustain, or incur in regard to any hazardous substance relating to the Premises.

   d. <u>Private Sale/No Competitive Bidding and Alternative Transaction</u>. The Debtors are seeking approval for a proposed sale of the Premises to the Purchaser by private sale free and clear of all liens, claims, encumbrances and other interest, and upon the terms and conditions set forth in the Purchase Agreement. While the Purchase Agreement provides for and allows the consummation of an alternative transaction, if the Seller terminates the Purchase Agreement in favor of a sale to a third party, the Purchaser is entitled to receive CAN$360,000[8] (the "<u>Break-Up Fee</u>") from the proceeds of the alternate transaction.

   e. <u>Closing and Other Deadlines</u>. The closing date of the private sale shall take place no later than 6:00 p.m. on the date that is thirty (30) days after the execution of the Purchase Agreement, and is conditioned upon the entry of an order by the Bankruptcy Court approving the sale and Purchase Agreement.

   f. <u>Good Faith Deposit</u>. The Purchase Agreement requires the Purchaser to fund in good faith, a deposit of CAN$500,000.[9]

   g. <u>Interim Arrangements with Purchaser</u>. The Debtors do not have any interim management or other agreement with the Purchaser.

   h. <u>Use of Proceeds</u>. The Purchase Agreement does not address the use of proceeds generated by the sale. All proceeds will be distributed pursuant to the Final DIP Order [D.I. 214], or as otherwise ordered by this Court.

---

[8] Approximately US$275,652 as of the prevailing international exchange rates as of the date of filing this Motion.

[9] Approximately US$382,850 as of the prevailing international exchange rates as of the date of filing this Motion.

8

i. <u>Tax Exemption</u>.  The Debtors are not seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code.

j. <u>Record Retention</u>.  The Debtors will retain, or have reasonable access to, all records necessary for the administration of these chapter 11 cases.

k. <u>Sale of Avoidance Actions</u>.  The Debtors are not seeking to sell avoidance actions.

l. <u>Requested Findings as to Successor Liability</u>.  The Debtors are seeking to sell the Premises free and clear of successor liability claims.

m. <u>Sale Free and Clear of Unexpired Leases</u>.  The Debtors are not seeking to sell the Premises free and clear of any unexpired leasehold interests or other rights.

n. <u>Credit Bid</u>.  The Purchase Agreement does not contemplate a right to credit bid.

o. <u>Relief from Bankruptcy Rule 6004(h)</u>.  The Debtors are seeking relief from the fourteen-day (14) stay imposed by Bankruptcy Rule 6004(h) for the private sale.

18. While the Debtors believe the Purchase Agreement is in final, agreed form, the Debtors request authorization to accept such modifications and edits to the Purchase Agreement that are not materially burdensome or harmful to the estates as may be submitted by and agreed upon between the Purchaser and the Debtors (in consultation with the Consultation Parties) in their discretion and the Debtors' business judgment without further order of the Court.

**B.  The Sale of the Premises is Appropriate Under Section 363(b)(1) of the Bankruptcy Code.**

19. The Debtors historically managed their real estate holdings by engaging in sale, purchase, and leasing transactions from time to time.  Therefore, the Debtors submit that this proposed sale is within the ordinary course and may be consummated without Court approval.

20. Nevertheless, out of an abundance of caution, the Debtors are seeking Court approval of the sale of the Premises, including the protections afforded to the Purchaser in the event the Debtors consummate an alternative transaction, as permitted by the Purchase Agreement.

21. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of the debtor's estate. Specifically, that section provides, in relevant

9

part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b).

22. The Debtors' sale or use of property of the estates outside the ordinary course of business should be approved by the Court if the Debtors can demonstrate a sound business justification for the proposed transaction. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394–95 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513 (7th Cir. 1991)).

23. Courts have applied the following four factors in determining whether a sound business justification exists: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See In re Del. & Hudson Ry. Co.*, 124 B.R. at 175–76 (adopting *Lionel* factors to consider in determining whether sound business purpose exists for sale outside ordinary course of business in this District); *Lionel Corp.*, 722 F.2d at 1071 (setting forth the "sound business" purpose test); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147–49 (3d Cir. 1986) (implicitly adopting the articulated business justification test set forth in *Lionel* and adding the "good faith" requirement).

24. Once debtors articulate a valid business justification, their decision to sell property out of the ordinary course of business enjoys a strong "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res. Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to a debtor's proposed asset sale must make a showing of

EAST\171528784.3

"bad faith, self-interest, or gross negligence," as courts are loath to interfere with corporate decisions absent such a showing. *See id.* at 656; *see also In re Promise Healthcare Group, LLC, et al.*, Case No. 18-12491 (CSS) [D.I. 770] (order approving the private sale of the Debtors' certain Louisiana facilities upon the Debtors' showing they properly exercised their business judgment and set forth sound business justifications for pursuing such a private sale, having marketed the private sale and showing that the purchaser was the only bidder for the Louisiana facilities that could close a sale promptly on terms favorable to the Debtors).

25. It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and in appropriate cases should, be approved. *See, e.g.*, *In re Bakalis,* 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion… to conduct public or private sales of estate property.") (internal quotations and citations omitted); *In re Dewey & LeBeouf,* Case No. 12-12321 (MG), 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection because the debtor established a good business reason to proceed by private sale); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship* (*In re Woodscape Ltd. P'ship*), 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale… and there is no requirement that the sale be by public auction."); *see also In re Promise Healthcare Group, LLC, et al.*, Case No. 18-12491 (CSS) [D.I. 426, 770, and 778] (orders approving the private sale of the Debtors' Louisiana facilities and their St. Alexius facility outside the ordinary course of business).

26. The Debtors, in their business judgment, and in consultation with the Consultation Parties, believe that the sale of the Premises to the Purchaser represents the high end of the range

11

of fair market value for the Premises under the circumstances of these cases. Furthermore, the Debtors believe, given that (a) the Purchaser can consummate the private sale transaction sooner than if the Debtors subjected the Premises to the Auction with the other Remaining Assets, (b) thus far, other potential bids and indications of interest in connection with the marketing of the Premises have not exhibited value or interest comparable to the proposed sale, and (c) nothing in the Purchase Agreement prohibits the Debtors from pursuing or consummating any alternative transaction that, in the Debtors' business judgement will maximize the value of their estates (notwithstanding anything else provided herein), the Debtors believe, in their business judgment, and in consultation with the Consultation Parties, that it is unlikely the Auction will lead to a higher or otherwise better bid for the Premises. Accordingly, the Debtors respectfully submit that the proposed private sale of the Premises to the Purchaser should be approved.

**C.    Any Sale Should be Approved Free and Clear of Liens, Interests and Encumbrances.**

27.    Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, interest or encumbrance in such property if, among other things:

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28.    Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only one of

the enumerated conditions must be met in order for the Court to approve the proposed sale"); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 827 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

29. The Debtors will serve notice of the Motion on the Office of the United States Trustee, the Committee, the DIP Agent, the Prepetition Term Loan Agent, the Prepetition ABL Agent, and applicable taxing authorities, and each will have an opportunity to object to the private sale, and the Debtors expect to obtain the consent of the DIP Agent, Prepetition ABL Agent, and Prepetition Term Loan Agent, such that section 363(f)(2) will apply. The Debtors contend that no other party asserts or holds a valid, perfected lien on the Premises. Accordingly, to the extent any party contends that it holds a valid lien on the Premises, such lien is subject to bona fide dispute, and the Debtors may sell the Premises free and clear of such purported lien, under section 363(f)(4) of the Bankruptcy Code. Therefore, the Debtors request that the private sale be approved free and clear of all encumbrances and interests, with the proceeds of the sale being distributed in accordance with the terms of the Final DIP Order.

**D.      The Sale of the Premises is Proposed in Good Faith.**

30. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

31. Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *Abbotts Dairies of Penn., Inc.*, 788 F.2d at 147 (quoting *Hoese Corp. v. Vetter Corp.* (*In re Vetter Corp.*), 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) (same).

32. While the Bankruptcy Code does not define "good faith", some courts have held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988) (quoting *Willemain v. Kivitz* (*In re Willemain*), 764 F.2d 1019, 1023 (4th Cir. 1985)). Furthermore, the good faith status of a purchaser can be destroyed with evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *TMT Procurement Corp. v. Vantage Drilling Co.* (*In re TMT Procurement Corp.*), 764 F.3d 512, 521 (5th Cir. 2014).

33. The private sale has been proposed in good faith. The Purchase Agreement was the product of extensive good faith, arm's length negotiations between the Debtors, on the one hand, and the Purchaser, on the other, and was negotiated with the active involvement of the Debtors' Consultation Parties and professionals. The Debtors believe and submit that the sale of the Premises to the Purchaser pursuant to the terms and conditions of the Purchase Agreement is not the product of collusion or bad faith. No evidence suggests that the Purchase Agreement is anything but the product of arm's length negotiations between the Debtors, the Purchaser, and their respective professional advisors. In connection with approval of the proposed private sale, the

14

Debtors request that the Court make a finding that the Purchaser is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

34. Furthermore, the Debtor are unaware of any circumstances or facts that could be perceived as or that the Purchaser or any other party colluded.

## **WAIVER OF BANKRUPTCY RULE 6004(h)**

35. The Debtors respectfully request that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h). Timely consummation of the proposed sale is of critical importance to both the Debtors and the Purchaser, and is vital to the Debtors' efforts to maximize the value of the Debtors' estates. Accordingly, the Debtors hereby request that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

## **NOTICE**

36. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) applicable Taxing Authorities; (iv) counsel to the Committee; (v) the Securities and Exchange Commission; (vi) the Purchaser; (vii) the Real Estate Agent; (viii) Schulte Roth & Zabel LLP and Landis Rath & Cobb LLP, co-counsel to Blue Torch Finance, LLC; (ix) King & Spalding LLP, counsel to Luminus Energy Partners Master Fund, Ltd.; (x) Goldberg Kohn Ltd. and Morris, Nichols, Arsht & Tunnell LLP, co-counsel to MidCap Funding IV Trust; (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (xii) any other party entitled to notice of this Motion. The Debtors respectfully submit that no other or further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that this Court (i) enter the Proposed Order, substantially in the form of attached hereto as **Exhibit A**, granting the relief requested in this Motion, and (ii) grant such other and further relief as this Court may deem just and proper.

Dated: January 13, 2020
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
Matthew S. Sarna (DE 6578)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@us.dlapiper.com
       matthew.sarna@us.dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
Jamila Justine Willis (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: richard.chesley@us.dlapiper.com
       jamila.willis@us.dlapiper.com

*Counsel to the Debtors*