## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                                  :    Chapter 11
                                                        :
      CELADON GROUP, INC., *et al.*,[1]       :    Case No. 19-12606 (KBO)
                                                        :
      Debtors.                                :    (Jointly Administered)
                                                        :
------------------------------------------------------------x    **Related D.I.: 48, 178, 197, 218, 245, 253 & 306**

### ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT, (B) AUTHORIZING AND APPROVING THE SALE TO THE BUYER OF SUBSTANTIALLY ALL ASSETS OF TAYLOR EXPRESS, INC. PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE; (D) AUTHORIZING THE DEBTORS TO CONSUMMATE TRANSACTIONS RELATED TO THE ABOVE; AND <u>(E) GRANTING RELATED RELIEF</u>

This matter is before the Court upon the motion [D.I. 48] (the "<u>Sale Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Asset Purchase Agreement (as defined herein), as applicable.

Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure

of the Court for the District of Delaware (the "Local Rules") seeking entry of an order (this "Sale

Order"): (a) authorizing the sale of the Acquired Assets of Taylor Express, Inc. to White Willow

Holdings LLC (the "Buyer") free and clear of any and all liens, claims, encumbrances, and other

interests, other than Permitted Liens and Assumed Liabilities; (b) authorizing the assumption and

assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and

(c) granting related relief; and the Court having entered on January 6, 2020 the Bid Procedures

Order;[3] and notice of the Sale Motion, the Bidding Procedure Order and the Cure Notice[4] having

been duly provided and sufficient given the circumstances; and the Debtors having determined

that the highest and otherwise best offer for the Acquired Assets was made by the Buyer pursuant

to the Asset Purchase Agreement; and the Debtors having selected the Buyer to serve as a stalking

horse purchaser for the Acquired Assets pursuant to the Stalking Horse Notice;[5] and the Court

having conducted a hearing on January 30, 2020 (the "Sale Hearing"), at which time all parties in

interest were offered an opportunity to be heard with respect to the proposed sale of the Acquired

Assets (the "Sale"), to consider the approval of the Sale pursuant to the terms and conditions of

the Asset Purchase Agreement, and the Court having considered: (i) the Sale Motion and any

objections thereto; (ii) the proposed Sale of the Acquired Assets by the Sellers to the Buyer

---

[3] *Order: (I)(A) Approving Bidding Procedures and Bid Protections, (B) Permitting Debtors to Designate Stalking Horse Buyer(s) and Grant Bid Protections, (C) Scheduling a Hearing to Consider Approval of the Sale of Assets, (D) Approving Form and Manner of Notice of Sale, and (E) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets of Taylor Express, Inc. Free and clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [D.I. 218] (the "Bidding Procedures Order").*

[4] *Notice of (I) Cure Amount with Respect to Executory Contracts and Unexpired Leases Potentially to be Assumed and Assigned and (II) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases Regarding Sale of the Business of Taylor Express, Inc. [D.I. 253] (the "Cure Notice").*

[5] *Notice of Intent to Designate White Willow Holdings LLC as Designated Stalking Horse Bidder for the Taylor Express, Inc. Business and Assets [D.I. 306] (the "Stalking Horse Notice").*

pursuant to the Asset Purchase Agreement; (iii) the arguments of counsel made and evidence adduced and related thereto; and (iv) the full record in these Chapter 11 Cases, including the record related to the hearing to consider the Bidding Procedures Order and the Sale Hearing held before the Court; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Asset Purchase Agreement and the Sale of the Acquired Assets and other transactions contemplated by the Asset Purchase Agreement; and it appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and upon consideration of the *Notice of Sales Going Forward at the Auction* [D.I. 317] (the "Auction Notice"), and after due deliberation thereon and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS, CONCLUDES AND DETERMINES THAT:**

**I.     Jurisdiction, Final Order and Statutory Predicates**

A.     The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason

3

for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 and Local Rules 2002-1 and 6004-1.

D.       The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

E.       In the absence of a stay pending appeal, the Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the transaction contemplated by this Sale Order and the final Asset Purchase Agreement (together with any schedules, exhibits and any other documents or instruments related thereto, the "Asset Purchase Agreement," a copy of which is attached hereto as **Exhibit 1**, as modified, amended or supplemented from time to time) at any time after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

## II.       Bidding Procedures and Bidding Procedures Order

A.       The Court entered the Bidding Procedures Order on January 6, 2020 [D.I. 218].

B.       The Debtors conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets.

### III.    Notice of the Sale, Auction and the Cure Costs

A.    In compliance with the Bidding Procedures Order, actual written notice of the Sale Motion and the Sale Hearing and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein have been afforded to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"): (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney General for the District of Delaware; (iii) the Committee; (iv) counsel to Blue Torch Finance LLC (in its capacity as the administrative agent under the Credit Agreement ("Credit Agreement Agent"), and in its capacity as the administrative agent, and lender, under the *Debtor-In-Possession Secured Multi-Draw Term Promissory Note* [D.I. 11, Ex. B], the "DIP Agent"); (v) the Internal Revenue Service; (vi) the U.S. Department of Justice; (vii) the offices of the attorneys general for the states in which the Debtors operate; (viii) all of the Debtors' insurers; (ix) all parties entitled to notice pursuant to Rule 2002 of the Bankruptcy Rules or Local Rule 2002-1(B); and (x) other persons reasonably requesting notice of a potential purchase of the Acquired Assets.

B.    In accordance with the provisions of the Bidding Procedures Order, the Debtors have served the Cure Notice, as applicable, upon the contract counterparties (the "Contract Counterparties") to the executory contracts and unexpired leases that the Debtors may seek to assume and assign to the Buyer as of the Closing and setting forth the proposed Cure Costs, if any, for such assumed contracts and the deadline by which a Contract Counterparty shall have filed an objection to the Cure Costs or to assumption and assignment of the applicable executory contracts and/or unexpired leases.

C. On January 16, 2020, the Debtors' filed (i) the Stalking Horse Notice, pursuant to which, in accordance with the Asset Purchase Agreement, the Debtors designated the Buyer as stalking horse Buyer and granted the Buyer bid protections, which such designation (given the absence of any objections to same) became approved without further Court order on January 21, 2020 and (ii) a copy of the Asset Purchase Agreement [D.I. 305].

D. As evidenced by the affidavits of service previously filed with the Court [D.I. 89, 226, 283, 286, 294, 323 and 324], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, Sale, Stalking Horse Notice, Asset Purchase Agreement, the Cure Notice and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Buyer at Closing pursuant to this Sale Order has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9008 and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice.  Such notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale, or assumption and assignment of the Assumed Contracts is, or shall be, required.

E. The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Sale Motion, including regarding the sale process.

F. The disclosures made by the Debtors concerning the Sale Motion, the Asset Purchase Agreement, the Stalking Horse Notice, the Auction, Sale Hearing, and the Sale were good, complete and adequate.

IV.    **Good Faith of the Buyer**

A.    The Buyer is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code), and, therefore is entitled to the full protection of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with these cases in that, *inter alia*: (a) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring any or all of the Acquired Assets; (b) the Buyer complied with the provisions in the Bidding Procedures Order; (c) the Buyer agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filing by any of the Debtors; (e) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (f) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (g) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors; and (h) the negotiation and execution of Asset Purchase Agreement and any other agreements or instruments related thereto were at arms' length and in good faith.

B.    The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

V.    **Corporate Authority**

A.    The Acquired Assets constitute property of the Debtors' estates and title thereto was vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.

B.      The Debtors, acting by and through their existing agents, representatives, and offices, (i) have full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale with the Buyer has been duly and validly authorized by all necessary corporate action; (ii) have all of the corporate power and authority necessary to consummate the Sale and the transactions contemplated by the Asset Purchase Agreement; (iii) have taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the Sale and the transactions contemplated thereby; and (iv) require no further consents or approvals to consummate the Sale (except as otherwise set forth in the Asset Purchase Agreement).

**VI.    Highest or Best Offer**

A.      Prior to selecting the Buyer as the Successful Bidder, the Debtors and their professionals solicited offers to acquire the Acquired Assets from a wide variety of parties both prepetition and following the Petition Date.  The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures. The Debtors and their professionals adequately marketed the Acquired Assets and conducted the marketing and sale process in compliance with the Bidding Procedures and the Bidding Procedures Order.

B.      Based upon the record of these proceedings, creditors, holders of the Debtors' equity securities, and other parties in interest and prospective Buyers were afforded a reasonable and fair opportunity to bid for the Acquired Assets.  In accordance with the Bidding Procedures and Bidding Procedures Order, the Debtors afforded Potential Bidders confidential due diligence access to provide any such bidders an opportunity to submit a Qualified Bid and become a Qualified Bidder.

C.      Notwithstanding the marketing process undertaken by the Debtors and their professionals, no Qualified Bid, other than the Buyer's bid, as contemplated in the Asset Purchase Agreement in the amount of $14,500,000 (subject to adjustment as contemplated by the terms of the Asset Purchase Agreement), and a credit bid by Blue Torch Finance, LLC as lender under the Credit Agreement, was submitted by the Bid Deadline.  Accordingly, on January 20, 2020, the Debtors filed the Auction Notice, announcing that the Debtors had cancelled the Auction and deemed the Buyer the Successful Bidder, and Blue Torch Finance, LLC and Credit Agreement Agent consented to the Seller's acceptance of the Buyer's bid and withdrew its credit bid.

D.      The Bidding Procedures were designed to obtain the highest value for the Acquired Assets for the Debtors and their estates, and the Asset Purchase Agreement constitutes the highest or best offer for the Acquired Assets.  The Debtors' determination, in consultation with the Consultation Parties, that the Asset Purchase Agreement constitutes the highest or best offer for the Acquired Assets was a reasonable, valid and sound exercise of the Debtors' business judgment and the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going-concern basis and avoid decline and devaluation of the Acquired Assets and any other transaction would not have yielded as favorable an economic result.

E.      The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value or otherwise better terms to the Debtors' estates than the Buyer.

F.      Approval of the Sale Motion and the Asset Purchase Agreement and each of its exhibits, and the consummation of the Sale and the transactions contemplated by the Asset

Purchase Agreement are in the best interests of the Debtors, their creditors, their estates, their employees, and other parties in interest.

G.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

**VII.    No Fraudulent Transfer**

A.      There has been no showing that the Debtors or the Buyer (i) have entered into the Asset Purchase Agreement or propose to consummate the Sale and the transactions contemplated therein for the purposes of hindering, delaying, or defrauding the Debtors' present or future creditors under the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Sellers, any Debtor nor the Buyer has entered into the Asset Purchase Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose or intent or for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of any applicable jurisdiction.

B.      The consideration provided by the Buyer for the Acquired Assets, Assumed Contracts and Assumed Liabilities pursuant to the Asset Purchase Agreement is fair and adequate and (i) constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Conveyance Act); (ii) is fair consideration under the Uniform Fraudulent Transfer Act; and (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

## VIII.   Validity of Transfer

A.      The Debtors have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

B.      The transfer of the Acquired Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Debtors' interest in such assets, and vests or will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all liens, claims, encumbrances, and other interests accruing, arising, or relating to any time prior to the Closing Date, except as otherwise set forth in the Asset Purchase Agreement.

C.      The Buyer shall be afforded all exemptions from recording and/or transfer taxes that apply to the recordation of grant deeds conveying title to real property and improvements transferred to Buyer under the Asset Purchase Agreement as Acquired Assets so as to permit such recording to occur free of any such taxes.

## IX.   Section 363(f) Is Satisfied

A.      The Debtors may sell the Acquired Assets free and clear of all encumbrances (except for the Permitted Liens and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of encumbrances, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of the encumbrances, who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their encumbrances, if any, attach to the net cash proceeds of the Sale attributable to the Acquired Assets in which such holder alleges an

encumbrance, in the same order of priority, with the same validity, force and effect and subject to all of the Debtors' defenses and counterclaims, that such encumbrance had prior to the Sale.

B.    The Buyer shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities and its obligations specifically set forth in and solely to the extent provided pursuant to the Asset Purchase Agreement.

C.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, if the sale of the Acquired Assets to the Buyer, and the assumption and assignment of the Assumed Contracts to the Buyer, were not, free and clear of any and all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (except for Permitted Liens and Assumed Liabilities), including without limitation, any lien, claims, encumbrances of the Credit Agreement Agent and the DIP Agent, or if the Buyer would, or in the future could, be liable for any of such liens, claims, encumbrances, and other interests (except for Permitted Liens and Assumed Liabilities).

D.    By consummating the Sale, the Buyer is not a mere continuation of the Debtors' or any Debtor or any Debtor's estate, and there is no continuity between the Buyer and any Debtor. The Buyer is not holding itself out to the public as a continuation of any Debtor.  The buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de factor merger of the Buyer and the Debtors. The Buyer does not have a common identity of incorporators, directors or equity holders with the Debtors.  Except as provided in the Asset Purchase Agreement, neither the Buyer nor any of its Affiliates shall assume any obligation or liability of any Debtor and/or any Debtor's estate, including any obligation under any collective bargaining agreement or labor practice agreement.

**X.**    **Assumption and Assignment of the Assumed Contracts**

A.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order and the Asset Purchase Agreement is integral to the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.    Pursuant to the Asset Purchase Agreement, the Buyer may at any time prior to one (1) Business Day prior to the Closing, by written notice to the Sellers, modify the list of contracts to be assumed.

C.    Pursuant to the terms of the Asset Purchase Agreement, the Buyer has agreed to: (i) cure any monetary defaults under the Assumed Contracts by payment of any Cure Costs as determined in accordance with the Bidding Procedures upon transfer and assignment of all Assumed Contracts to Buyer within the meaning of section 365(b)(1)(A) of the Bankruptcy Code (provided that any Cure Costs in excess of $225,000 shall be paid by the Debtors from the Purchase Price on the Closing Date); (ii) provide compensation or adequate assurance of compensation to each Contract Counterparty for actual pecuniary loss to such party, resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provide adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code.  Each provision of the Assumed Contracts or applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning assignment of any Assumed Contracts has been satisfied or is otherwise unenforceable under Section 365 of the Bankruptcy Code.

D.      The Debtors and Buyer have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code.

## XI.      Circumstances for an Immediate Sale

A.      To enhance the Debtors' level of liquidity, to reduce the amount of postpetition financing borne by the Debtors, and to maximize the amount of funds available to satisfy the Debtors' creditors, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

B.      The Asset Purchase Agreement and Sale must be approved and the Closing must occur promptly to preserve the value of the Debtors' assets.

C.      Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed Sale of the Acquired Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

D.      The Sale involves substantially less than all of the Debtors' assets and does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests.

E.      The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363

and 365, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

Based upon the foregoing findings and conclusions, the Sale Motion and the record before the Court with respect to the Sale Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**<u>General Provisions</u>**

1.      The relief requested in the Sale Motion is granted and approved as set forth in this Sale Order.

2.      The Sale contemplated by and in the Asset Purchase Agreement is approved as set forth in this Sale Order.

3.      The record of these Chapter 11 Cases, including the Court's findings of fact and conclusions of law, as set forth in the Bidding Procedures Order, are incorporated herein by reference and the Court takes judicial notice of the record.

4.      Notice of the Sale Motion, the Auction (and cancellation of same), the Sale Hearing and the Sale was adequate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014 and Local Rules 2002-1 and 6004-1.

5.      Any and all objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, as announced to the Court at the Sale Hearing or by stipulation filed with the Court, or not otherwise resolved by this Sale Order, and all reservations of rights included therein, are hereby overruled and denied on the merits.

**Approval of the Asset Purchase Agreement**

6.      The Asset Purchase Agreement attached hereto as Exhibit 1 and all of the terms and conditions thereof, are hereby approved, and the Debtors are authorized and directed to enter into all related agreements and such other ancillary documents consistent with the terms hereof and in furtherance thereof.

7.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors and the Buyer, acting by and through their respective existing agents, representatives and officers, are authorized, empowered and directed to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and this Sale Order, (ii)  transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Asset Purchase Agreement, and (iii) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such ancillary documents. Neither the Buyer nor the Debtors shall have an obligation to close the Sale except as provided for in the Asset Purchase Agreement.

8.      The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or on the interests of the Buyer as determined by the Court or a court of competent jurisdiction.

9.     This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Claim (including as defined in section 101(5) of the Bankruptcy Code) against, or interest in, any Debtor, whether known or unknown, any holders of Claims or interests against or on all or any portion of the Acquired Assets, any holders of Liens (as defined in section 101(37) of the Bankruptcy Code), including, without limitation, all holders of recorded and unrecorded Liens encumbering the Acquired Assets consisting of real property or improvements, on all or any portion of the Acquired Assets, all Contract Counterparties, Blue Torch Finance, LLC, the Credit Agreement Agent, the DIP Agent and debtor-in-possession lenders, the Buyer and all successors and assigns of the Buyer, any other bidders for the Acquired Assets, any trustees, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.

10.     Upon the Closing Date, the Purchase Price (as defined in the Asset Purchase Agreement) shall be paid as set forth in Section 3.2 of the Asset Purchase Agreement and, in accordance with the lien priorities set forth in the Final DIP Order, the Debtors shall cause the Buyer to remit the Purchase Price as follows: (A) reserves for Anthem Insurance Companies, Inc. dba Anthem Blue Cross and Blue Shield ("Anthem") on account of health care claims for services covered by the Debtors' Self-Insured Health Plan and related services ("Medical Benefits")[6]; KERP/KEIP benefits; Professional Fee Reserve; and disputed Cure Costs in excess of $225,000 (collectively, the "Reserved Amounts") from proceeds attributable to the Term Loan Priority

---

[6]     The amount reserved for Anthem for payment of Medical Benefits, together with all other amounts reserved for payment of Medical Benefits from the proceeds of other asset sales pending as of the date hereof, shall total $1 million (collectively, the "Medical Benefits Escrow"). The requirement to release funds from the Medical Benefits Escrow to Anthem is subject to entry of an order approving the assumption of the Anthem ASA, as modified by agreement of the parties, or as otherwise ordered by the Court.

Collateral (as described below); then (B) (i) the portion of the Purchase Price attributable to Term Loan Priority Collateral and DIP Collateral (as such term is defined in the Final DIP Order) shall be paid to the Prepetition Term Loan Agent and DIP Agent (as defined in the Final DIP Order) to be applied to Prepetition Term Loan Obligations and DIP Obligations (as defined in the Final DIP Order) in accordance with the Prepetition Term Loan Agreement and DIP Credit Agreement (as defined in the Final DIP Order), and (ii) the portion of the Purchase Price attributable to the ABL Priority Collateral (as defined in the Final DIP) (the "ABL Priority Collateral Proceeds") shall be paid to the Prepetition ABL Agent (as defined in the Final DIP) to be (x) first applied to the Prepetition ABL Obligations (as defined in the Final DIP) (other than contingent Prepetition ABL Obligations) in accordance with the Prepetition ABL Credit Agreement (as defined in the Final DIP Order) until the Prepetition ABL Obligations (other than contingent Prepetition ABL Obligations) are paid in full in cash and (y) second, to be held as cash collateral to secure contingent Prepetition ABL Obligations in accordance with Section 1.3 of the Prepetition ABL Credit Agreement. The Purchase Price attributable to the ABL Priority Collateral shall equal the sum of (x) 95% of Eligible Accounts (as such term is defined in the Final DIP Order) constituting Acquired Assets under the APA plus (y) 50% of Ineligible Accounts (as such term is defined in the Final DIP Order) constituting Acquired Assets under the APA, with the determination of which Accounts (as defined in the Prepetition ABL Credit Agreement) constitute Eligible Accounts and which Accounts constitute Ineligible Accounts being determined based on the Borrowing Base Certificate (as defined in the Prepetition ABL Credit Agreement) delivered immediately prior to the Closing Date. The remainder of the Purchase Price (less the Reserved Amounts) shall be attributed to Term Loan Priority Collateral. The applications of proceeds to the Prepetition Term Loan Obligations, DIP Obligations and the Prepetition ABL Obligations, as applicable, are hereby

authorized on a final and indefeasible basis, and for the avoidance of doubt, no portion of the ABL Priority Collateral Proceeds shall be remitted to the Debtors on any Cash Collateral Remittance Date (as defined in Final DIP Order) or otherwise constitute Available Cash Collateral (as defined in the Final DIP Order).

11.     The terms and provisions of the Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, and the Buyer's respective successors and assigns, and any other affected third parties, including all persons asserting any Claims or interests in the Acquired Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding.

12.     Notwithstanding anything to the contrary, the Debtors (including any successors in interest) and the Buyer shall retain and preserve all books, records, emails, and other documents relating to the Debtors' business prior to the filing of these Chapter 11 Cases that are in the possession of either the Debtors or the Buyer immediately following the Closing Date, and shall provide each other and the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") with reasonable access to all such documents, **and produce to the SEC and DOJ all documents requested**.  Neither the Debtors nor the Buyer shall destroy or otherwise abandon any such documents or records without providing the Debtors, Buyer, the SEC and the DOJ, as applicable, at least 30 days' prior written notice of its intent to abandon or destroy such materials, and a reasonable opportunity to obtain possession thereof.  Such notice shall be provided via email to: Amy S. Cotter at cottera@sec.gov and Jaclyn J. Janssen at janssenj@sec.gov; and lawrence.atkinson2@usdoj.gov, nick.linder@usdoj.gov, and kyle.maurer@usdoj.gov.

**Satisfaction of Conditions Precedent**

13.     Neither the Buyer nor the Debtors shall have an obligation to close the Sale until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Sale have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

**Transfer of the Acquired Assets**

14.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Acquired Assets on the Closing Date.

15.     The Acquired Assets (including the Assumed Contracts) shall be transferred to the Buyer upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of the Debtors' interest in such Acquired Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of any lien (including a "lien" as defined in section 101(37) of the Bankruptcy Code), encumbrance, Claim and interest, right, demand, charge, mortgage, deed of trust, lease, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, encroachment, right of first refusal, preemptive right, proxy, voting trust or agreement, transfer restriction under any shareholder agreement or similar agreement, judgment, indenture, loan agreement, instrument, collective bargaining agreement, license, option, other lien (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), contract, right of recoupment or setoff, right of recovery, claim for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decree of any court or foreign or domestic governmental entity, or charge of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in

20

connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, liability related to the Internal Revenue Code, or any other liability relating to the Debtors' current and former employees, including any withdrawal liability or liabilities under any collective bargaining agreement or labor practice agreement, other interest, conditional sale or other title retention agreement or other impositions, imperfection or defect of title or restriction on transfer or use of any nature whatsoever, including any and all of the Excluded Liabilities (other than Assumed Liabilities and Permitted Liens under the Asset Purchase Agreement), of the Debtors or any of the Debtors' predecessors or Affiliates, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities and Permitted Liens) (collectively, the "Claims or Interests"), with all such Claims or Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

16.    On the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Buyer pursuant to the terms set forth in the Asset Purchase Agreement.  For the avoidance of

doubt, the Excluded Assets are not included in the Acquired Assets assigned, conveyed or transferred to the Buyer.

17.     Except as otherwise provided in the Asset Purchase Agreement, the Buyer and/or its Affiliates shall not have any liabilities for the prepetition and pre-Closing conduct of the Debtors or any of the officers, directors, employees, or agents, including any conduct which may be subject of ongoing investigations by the federal government.

18.     Upon the Closing, the Buyer shall take title to and possession of the Acquired Assets, subject only to the Assumed Liabilities and Permitted Liens, and the Acquired Assets shall thereafter be the sole and exclusive property of the Buyer and not be deemed property of the Debtors or their estates or any of their respective creditors for any purpose after the Closing.

19.     Notwithstanding anything in this Sale Order or in the Asset Purchase Agreement to the contrary, Excluded Accounts Receivable shall mean the first aggregate $650,000 in Accounts Receivables collected by the Buyer or the Sellers after the Closing Date.  To the extent Excluded Accounts Receivable are collected by the Buyer, the Buyer shall hold such funds in trust for the Buyer in a segregated account, and shall remit the funds on deposit in such segregated account to the Debtors on a weekly basis until the aggregate amount of Excluded Accounts Receivable transferred to the Debtors equals $650,000.  In the event and to the extent that Sellers collect Accounts Receivable before the total amount of $650,000 Excluded Accounts Receivable is remitted to Sellers, then the Sellers shall retain such collections on account of the Excluded Accounts Receivable and the amount of Excluded Accounts Receivable for which the Buyer is obligated to remit to the Sellers shall be reduced dollar for dollar; provided that to the extent the Sellers collects Accounts Receivable after the total amount of $650,000 Excluded Accounts

Receivables has been received by Seller, any collected Acquired Accounts Receivables will be immediately turned over to the Buyer.

20.     The sale of the Acquired Assets to the Buyer, and the assumption and assignment of the Assumed Contracts to the Buyer, shall be, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities or set forth in this Sale Order, free and clear of all Claims or Interests. The Acquired Assets shall not be subject to any Claims or Interests allowed in these Chapter 11 Cases, including, without limitation, any claims allowed under sections 361, 362, 363, 364, 365, 502, 503, 506, or 507 of the Bankruptcy Code, nor shall the Acquired Assets be subject to a surcharge or "carve out" that is otherwise agreed to or approved in these Chapter 11 Cases.

21.     Except as expressly provided by the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens, all persons and entities holding Claims or Interests on, or against, as applicable, all or any portion of the Acquired Assets, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their property or the Acquired Assets, such persons' or entities' rights relating to any such Claims or Interests.  On the Closing Date, the Debtors and each holder of Claims or Interests is authorized to execute such documents and take all other actions as may be deemed by the Buyer to be necessary or desirable to release its Claims or Interests on the Acquired Assets, as provided for herein, as such Claims or Interests, as applicable, may have been recorded or may otherwise exist.

22.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets and assign the Assumed Contracts to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

23.     All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date (wherever located) are directed to surrender possession of such Acquired Assets to the Buyer or its assignee at the Closing.

24.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Claims or Interests.

25.     Upon consummation of the Sale set forth in the Asset Purchase Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims or Interests against, on or in, all or any portion of the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Claims or Interests that the person or entity has or may assert with respect to all or any portion of the Acquired Assets and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Claims or Interests, then: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims or Interests in the Acquired Assets of any kind or nature (except as otherwise assumed in the Asset Purchase Agreement).  For the avoidance of doubt, to the extent necessary, upon consummation of the Sale set forth in the Asset Purchase Agreement, the Buyer is authorized to file, with respect to the Acquired Assets, termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements to attach, perfect or otherwise notice any lien or encumbrance that is

24

extinguished or otherwise released pursuant to this Sale Order under section 363 and the related provisions of the Bankruptcy Code.

26.      This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order to consummate the transactions contemplated by the Asset Purchase Agreement.  The provisions of this Sale Order authorizing the Sale of the Acquired Assets by the Debtors free and clear of Claims or Interests shall be self-executing, and none of the Debtors, the Buyer or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the Sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Sale Order or the Asset Purchase Agreement.

27.      Notwithstanding anything to the contrary in this Sale Order, in the Sale Motion or the Asset Purchase Agreement, the Buyer shall receive the benefits and burdens of, and be responsible for payment in full of all accrued charges, payments, and the like arising under or pursuant to the Assumed Liabilities.  If the Buyer disputes any alleged charge, credit or payment under any of the Assumed Liabilities and the parties are unable to come to an agreement regarding

the amount actually owed, the dispute may be adjudicated by the Court or any other court of competent jurisdiction.  The Buyer shall be entitled, but not required, to file or record a certified copy of this Sale Order in the applicable public records in order to give notice of the termination and release of Claims or Interests pursuant to this Sale Order.

28.     This Sale Order shall be effective as a determination that, as of the Closing Date, all Claims or Interests arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Closing Date, in any way relating to the Debtors or these Chapter 11 Cases or the negotiation, formulation, preparation, entry into, and the Asset Purchase Agreement have been unconditionally released, discharged and terminated as to Buyer and the Acquired Assets.

**Executory Contracts and Leases**

29.     Upon the Closing of the Sale, the Debtors are authorized and directed to assume and assign the Assumed Contracts to the Buyer free and clear of all Claims or Interests, except for the obligation to pay the applicable Cure Costs, if any.  With respect to each Assumed Contract, the payment of the applicable Cure Costs (if any) by the Buyer shall (a) effect a cure of all monetary defaults existing thereunder as of the Closing Date, (b) compensate the applicable Contract Counterparty for any actual pecuniary loss resulting from such default, and (c) together with the assumption of the Assumed Contract by the Buyer, constitute adequate assurance of future performance thereof.  The Buyer shall then have assumed the Assumed Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Contracts shall not be a default thereunder.  After the payment of the relevant Cure Costs by the Buyer, neither the Debtors nor the Buyer shall have any further liabilities to the Contract Counterparties

other than the Buyer's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

30.     In the event the Buyer designates the executory contracts with Anthem to be assumed and assigned to Buyer, then notwithstanding anything to the contrary herein, any liens, setoffs, recoupments or security interests existing by and between any Debtor and Anthem Insurance Companies, Inc., d/b/a Anthem Blue Cross and Blue Shield, and/or any of its affiliates or subsidiaries, if any in each case provided by applicable law, shall not be affected, altered, amended, primed, subordinated, waived, deleted and/or changed in any way, and shall remain in full force and effect as to the Debtors and all other parties to the same extent and in the same priority in which they existed immediately before the filing of these Chapter 11 Cases.

31.     The Buyer shall be liable for the payment of all Cure Costs with respect to the Assumed Contracts, except as otherwise provided in the Asset Purchase Agreement.

32.     Pursuant to the terms of the Asset Purchase Agreement, the Buyer may, by written notice to the Debtors, choose to exclude certain of the Contracts from the list of Assumed Contracts until one (1) business days prior to the Closing Date, in which case each such Contract shall not be assumed by the Debtors.

33.     Any provisions in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to section 365(f) of the Bankruptcy Code.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have

been satisfied, and such assumption and assignment shall not constitute a default thereunder.  Upon the Closing and the payment of the required Cure Costs by the Buyer, if any, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under each Assumed Contract.

34.     There shall be no rent accelerations, assignment fees, deposits, increases (including advertising rates) or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

35.     Upon the Closing and the payment of the Cure Costs by the Buyer, if any, applicable to any Assumed Contract, the Buyer shall be deemed to be substituted for the relevant Debtor as a party to such Assumed Contract, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under such Assumed Contract.

36.     Upon the Closing and the payment of the applicable Cure Costs, if any, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assumed Contract that is assumed and assigned to the Buyer pursuant to the Asset Purchase Agreement (including those of the type described in Section 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and no default shall exist thereunder and there shall not exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

37.     To the extent that an objection by a Contract Counterparty to any executory contract or unexpired lease, including all objections related to Cure Costs, is not resolved or over-ruled prior to the Closing, the Debtors, in consultation with the Buyer, may elect to (i) postpone the assumption of such executory contract until the resolution of such objection, or (ii) reserve the

disputed Cure Costs and assume the executory contract in question on the Closing.  So long as the Debtors hold the claimed Cure Costs in reserve, and there are no other unresolved objections to the assumption and assignment of the applicable executory contract or unexpired lease, the Debtors can, without further delay, assume and assign the executory contract or unexpired lease that is the subject of the objection to the Buyer.  Under such circumstances, the respective objecting Contract Counterparty's recourse is limited to the funds held in reserve.

38.    Notwithstanding anything to the contrary in the Asset Purchase Agreement or this Sale Order, to the extent that the Buyer, the Debtors and an Objecting Contract Counterparty are unable to reach a consensual resolution to an objection related to Cure Costs and adequate assurance of future performance, nothing in this Sale Order shall effectuate the transfer of the Assumed Contract in question unless and until a further order is entered by the Court approving assumption and assignment and payment of the Cure Cost to the Objecting Contract Counterparty, in the amount agreed upon among the parties, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Buyer and the Objecting Contract Counterparty with the rights of the parties fully preserved pending entry of such further order.

39.    Notwithstanding anything in the Sale Order or the Asset Purchase Agreement, the Cure Notice, any list or schedule of assumed contracts, assumed and assigned contracts, or cure amounts, nothing shall permit or otherwise effect a sale, an assignment or any other transfer at this time of (a) any insurance policy that has been issued by ACE American Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company or Great Northern Insurance Company (and, together with each of their affiliates and successors, the "Chubb Companies") and all agreements, documents or instruments relating thereto (collectively, the

"Chubb Insurance Contracts"), or (b) any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, or (c) any collateral securing the Debtors' obligations under the Chubb Insurance Contracts (together with any proceeds thereof, the "Chubb Collateral"), unless and until a further order is entered by this Court, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Buyer and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order.  Such further order, without further notice, may provide, among other things, that (i) subject to the execution of an assumption agreement by the Debtors, the Buyer and the Chubb Companies, in form and substance satisfactory to each of the parties (the "Chubb Assumption Agreement"), the Debtors are authorized to assume and assign the Chubb Insurance Contracts to the Buyer and the Buyer shall assume and shall be liable for all obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Chubb Insurance Contracts that become liquidated, due and owing on and after the effective date of such assumption by the Buyer; (ii) the rights and interests of the Debtors in the Chubb Collateral shall be transferred and assigned to the Buyer; (iii) the Debtors are authorized to enter into the Chubb Assumption Agreement; and (iv) such other and further relief as may be requested by the Chubb Companies, the Debtors and/or the Buyer.

40.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code and this Sale Order, the Buyer shall be fully and irrevocable vested in all right, title, and interest of each Assumed Contract.  To the extent provided in the Asset Purchase Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

41.    Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing, the Buyer shall pay the Cure Costs relating to any Assumed Contract; provided, however, to the

extent the Cure Costs exceed $225,000, such amount shall be a deduction to the Purchase Price as provided for in the Asset Purchase Agreement.

42.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors, their estates, the Buyer, or any of their respective successors and assigns any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

**Other Provisions**

43.     Effective upon the Closing Date, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, employees and former employees, dealers and sale representatives, and trade or other creditors holder Claims or Interests of any kind or nature whatsoever against or in the Debtors of the Acquired Assets (including, without limitation, the Credit Agreement Agent, DIP Agent and debtor-in-possession lenders and Blue Torch Finance, LLC), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing, or the transfer of the Acquired Assets to the Buyer, whether such Claims or Interest are direct or derivative Claims or Interests, are hereby forever barred, estopped, prohibited and permanently enjoined from commencing or continuing in any manner, or otherwise asserting any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer and its Affiliates and Subsidiaries, its successors and assigns, or the Acquired Assets, with respect to (a) any Claims or Interests arising prior to the Closing of the Sale or (b) successor liability, to the extent allowed by applicable law.

44.     Except as otherwise provided in the Asset Purchase Agreement, the Buyer shall have no obligation, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), to pay wages, bonuses, severance pay, benefits (including contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to employees of Debtors or their Affiliates.  Except as otherwise provided in the Asset Purchase Agreement, the Buyer shall have no liability, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), with respect to any collective bargaining agreement, labor practice agreement employee pension plan, employee welfare or retention, benefit, and/or incentive plan to which Debtors or their Affiliates are a party and relating to the Debtors' businesses (including arising from or related to the rejection or other termination of any such agreement), and the Buyer shall in no way, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), be deemed a party to or assignee of any such agreement, and no employee of the Buyer shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against the Buyer any and all Claims or Interests arising from or relating to such agreement.

45.     Following the Closing, no holder of a Claim or Interest in or against the Debtors or the Acquired Assets shall interfere with the Buyer's title to, or use and enjoyment of, the Acquired Assets based on or related to such Claim or Interest or any actions that the Debtors may take in these Chapter 11 Cases or any successor cases.

46.     To the maximum extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the

Debtors with respect to the Acquired Assets and, to the maximum extent available under applicable law, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, transferred to the Buyer as of the Closing Date, and all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding seeking to revoke, terminate or refuse to renew, based upon conduct occurring prior to the Sale, any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.  All existing licenses or permits applicable to the Acquired Assets shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.

47.    For avoidance of doubt, nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  Nothing in this Sale Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police

or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale

Order.

48.     Except for the Assumed Liabilities, the Buyer shall not have any liability for any

obligation of the Debtors arising under or related to any of the Acquired Assets.  Without limiting

the generality of the foregoing, and except for the Assumed Liabilities, the Buyer shall not be

liable for any Claims against the Debtors or any of their predecessors or affiliates.  By virtue of

the Sale, to the extent allowed by applicable law and except as otherwise set forth in this Sale

Order any plan of reorganization or liquidation confirmed in these Chapter 11 Cases, the Buyer

and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal

successor, or otherwise be deemed a successor to any of the Debtors, (b) have, *de facto* or

otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial

continuation, of any of the Debtors or their respective estates, businesses or operations, or any

enterprise of the Debtors, in each case by any law or equity, and the Buyer has not assumed nor is

it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates,

except with respect to the Assumed Liabilities.  To the extent allowed by applicable law and except

as otherwise set forth in this Sale Order, the Buyer shall have no successor or vicarious liabilities

of any kind or character, including, but not limited to, any theory of antitrust, environmental,

successor or transferee liability, labor or employment law, including, but not limited to the

Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act,

Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967,

the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated

Omnibus Budget Reconciliation Act of 1985, the Consolidated Omnibus Budget Reconciliation

Act, or the Worker Adjustment Retraining Notification Act, the Comprehensive Environmental

Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* or similar state law claims, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing Date.

49.     For avoidance of doubt, nothing in this Sale Order shall enjoin, release, impair or otherwise preclude the United States from pursuing any criminal action or any police or regulatory action against the Debtors or from pursuing any liability to the United States that is a not a "claim" within the meaning of section 101(5) of the Bankruptcy Code.

50.     Neither the Buyer nor any of its Affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and neither the Buyer nor any of its Affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise provided in the Asset Purchase Agreement or this Sale Order.

51.     The transactions contemplated by the Asset Purchase Agreement and this Sale Order are undertaken by the Buyer without collusion and in good faith, and the Buyer is a good faith Buyer of the Acquired Assets, as that term is described in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and such Sale are duly stayed pending such appeal.  Because the Buyer is a good faith buyer within the meaning of section

363(m) of the Bankruptcy Code the Buyer, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

52.     The Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Acquired Assets, and therefore neither the Debtors nor any successor in interest to the Debtors' estates nor any other party in interest (including the Committee or any holder of equity securities of the Debtors) shall be entitled to bring an action against the Buyer or any if its Affiliates, and the sale of the Acquired Assets may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

53.     For avoidance of doubt, nothing contained therein shall modify, affect, or abrogate the rights of the Committee, under Sections 5.10 and  5.23(b) of the Final DIP Order.

54.     Nothing contained in any plan of reorganization or liquidation, or order or pleading of any type or kind entered at any time in these Chapter 11 Cases,  or any subsequent chapter 7 or chapter 11 case of the Debtors, either current or subsequent, or any related proceeding subsequent to entry of this Sale Order, shall directly conflict with or directly derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order, and any prior orders in these Chapter 11 Cases shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale and the Asset Purchase Agreement.

55.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.  In the absence of any person or entity obtaining a stay pending appeal, the Buyer and Debtors are free to close the Sale under the Asset Purchase Agreement at any time pursuant to the terms of the Asset Purchase Agreement.

56.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

57.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a) and Local Rule 9006-1.

58.     To the extent that this Sale Order is inconsistent with the Asset Purchase Agreement, and any prior order or pleading with respect to the Sale Motion filed in these Chapter 11 Cases, the terms of this Sale Order shall govern.

**Modification of the Automatic Stay**

59.     The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Sale Order.

60.     The failure specifically to include any particular provisions of the Asset Purchase Agreement including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the Asset Purchase Agreement and each document, agreement or instrument be authorized and approved in its entirety.

61.     The provisions of this Sale Order are nonseverable and mutually dependent.

62.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Order.

**<u>Retention of Jurisdiction</u>**

63.     The Court retains jurisdiction prior to, on and after the Closing Date to, among other things, interpret, enforce, and implement the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith.

**Dated: January 31st, 2020**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**