IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
: Chapter 11
In re: :
: Case No. 19-12606 (KBO)
CELADON GROUP, INC., *et al.*,[1] :
: (Jointly Administered)
Debtors. :
: Related D.I.: 464, 535
---------------------------------------------------------- x

## ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY RITCHIE BROS. AUCTIONEERS (AMERICA) INC. AS AUCTIONEER AND BROKER, *NUNC PRO TUNC* TO FEBRUARY 10, 2020; (II) AUTHORIZING THE SALE OF THE FLEET FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF

This matter coming before the court upon the *Application of the Debtors for Entry of an Order (i) Authorizing the Debtors to Retain and Employ Ritchie Bros. Auctioneers (America) Inc. as Auctioneer and Broker, Nunc Pro Tunc to February 10, 2020; (ii) Authorizing the Sale of the Fleet Free and Clear of all Liens, Claims and Encumbrances; and (iii) Granting Related Relief* (the "Application"),[2] (i) authorizing the Debtors to retain and employ Ritchie Bros. Auctioneers (America) Inc. and certain of its affiliates ("RB Group") as auctioneer and broker and for related services as to the Fleet, *nunc pro tunc* to February 10, 2020; (ii) approving the Sales Agreement dated February 10, 2020 (the "Agreement"), as modified by this Order; (iii) authorizing the sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Application.

of the Fleet free and clear of all liens, claims and encumbrances; and (iv) granting related relief; all as further described in the Application; and upon the Nash Declaration; and upon the record of these chapter 11 cases; and upon the record of the hearing conducted by the Court on February 18, 2020; and this Court having found that (i) this Court has jurisdiction over the Debtors, their estates, property of their estates and to consider the Application and the relief requested therein under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (iv) venue of the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409, and (v) no further or other notice of the Application is required under the circumstances; and this Court having reviewed the Application and having heard the statements in support of the relief requested in the Application at a hearing before this Court (the "Hearing"); and having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted in this Order; and this Court having found and determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED, as set forth in this Order.

2. Subject to the limitations of this Order, the Debtors are authorized to retain and employ RB Group in accordance with the Agreement as modified herein, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, as auctioneer and broker in these chapter 11 cases, to sell the Fleet free and clear under sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 6004-1, on the

terms and conditions set forth in the Agreement, a copy of which is attached to this Order as **Exhibit 1**, *nunc pro tunc* to the Petition Date.

3. The terms of the Agreement are approved in all respects, except as limited or modified explicitly in this Order.

4. The Debtors, through RB Group, are hereby authorized to sell the Fleet in one or more lots in accordance with section 363 of the Bankruptcy Code and the procedures set forth in the Agreement.

5. The sale of the Fleet shall be free and clear of all claims, liens, encumbrances and interests. All liens attached or asserted to be attached to the Fleet, or any portion thereof, shall attach to the proceeds of the sale of the Fleet to the same extent, validity and priority enjoyed immediately before the sale, subject to all rights, defenses, challenges, counterclaims and objections of the Debtors and their estates. The foregoing preserves by way of adequate protection any asserted possessory or other lien allegedly attaching to any of the Fleet notwithstanding that possession of such items of the Fleet has been turned over to the Debtors, RB Group or any agent thereof so that such items may be Disposed of under the RB Group Agreement.

6. RB Group shall receive a commission of 8.25% of the gross sale price of each item in the Fleet, regardless of the method of sale. In addition, RB Group shall be reimbursed for all transportation and refurbishment costs incurred in connection with the Dispositions (the "Costs"), plus 10% of such Costs (the "Premiums"), totaling, in the aggregate, not more than $2,000,000 of such Costs and Premiums. Any Costs and Premiums incurred in excess of $2,000,000 shall be subject to approval by the Consultation Parties, but in no case shall any Costs and Premiums incurred exceed $2,400,000 without further order of the Court. In addition, and consistent with its standard practices, RB Group will impose the Transaction Fee upon buyers of items in the Fleet,

which is comprised of: (a) 10% on all lots selling for $10,000 or less, (b) 3.85% on all lots selling for more than $10,000 up to $33,500, with a minimum fee of $1,000 per lot or, (c) $1,290 on all lots selling for over $33,500 (in the currency of the auction). The Transaction Fee will apply to on-site, online, and proxy purchases. For avoidance of doubt, neither the Debtors nor their estates will be charged for any portion of the Transaction Fee.

7. RB Group is hereby exempt from the information and reporting requirements of Local Rule 2016-2(d) and shall not be required to file applications for allowance and payment of compensation, so long as RB Group complies with the Notice and Compensation Procedures.

8. Parties in interest may object to Commissions, Costs, and Premiums paid by the Debtors to RB Group, for reasons specified in section 328(a) of the Bankruptcy Code, no later than ten (10) days after RB Group files the Fee Statement (the "Objection Deadline"). Upon the expiration of the Objection Deadline, any objections to the Debtors' payment of Commissions, Costs, and Premiums to RB Group shall be barred.

9. Notwithstanding anything to the contrary in the Application or this Order, the Agreement, or the Declaration attached to the Application, any reimbursement provisions allowing for the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the services provided under the Agreement and fees for defending any objection to RB Group's entitlement to compensation under the Bankruptcy Code are hereby not approved.

10. The indemnification provisions included in the Agreement are approved, subject to the following:

    (a) No party shall be entitled to indemnification, contribution, or reimbursement pursuant to the Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court.

(b) The Debtors shall have no obligation to indemnify RB Group, or provide contribution, or reimbursement to RB Group, for any claim or expense to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from RB Group's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of RB Group's contractual obligations, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which RB Group should not receive indemnity, contribution or reimbursement under the terms of the Agreement, as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, a party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Agreement (as modified by this Order), including without limitation, the advancement of defense costs, the party must file an application therefor in this Court, and the Debtors may not pay any such amounts to the party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by any party for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the party. All parties in interest shall retain the right to object to any demand by any party for indemnification, contribution and/or reimbursement.

11. Any limitation of liability pursuant to the terms and conditions set forth in the Agreement, or otherwise, are hereby eliminated for the duration of these chapter 11 cases.

12. Third parties currently in possession, custody, or control of property of the Debtors' estates, including, but not limited to, items in the Fleet, shall, as soon as practicable, turnover to the Debtors, RB Group or RB Group's agents such property, and RB Group shall be authorized to accept possession, custody, or control of such property.

13. Notwithstanding anything to the contrary in this Order, none of the Debtors, RB Group or any of RB Group's agents shall access or enter upon any third party property to retrieve items in the Fleet absent the consent of such third party or order of the Court.

14. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

15. To the extent of any inconsistency between the Agreement and this Order, this Order shall control.

16. All applicable stays to the effect and implementation of this Order are waived, and the Debtors and RB Group are authorized to implement immediately the relief granted by this Order.

17. The Debtors and RB Group are authorized to take all steps necessary or appropriate to carry out the provisions of this Order.

18. The terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

19. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: February 19th, 2020
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE