# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         : Chapter 11
                                                               :
CELADON GROUP, INC., *et al.*,[1]                              : Case No. 19-12606 (KBO)
                                                               :
                    Debtors.                                   : (Jointly Administered)
                                                               :
                                                               : Hearing Date: March 19, 2020 at 1:30 p.m. (ET)
                                                               : Obj. Deadline: March 11, 2020 at 4:00 p.m. (ET)
---------------------------------------------------------------x

## APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY JONES LANG LASALLE BROKERAGE, INC. AS REAL ESTATE BROKER, *NUNC PRO TUNC* TO THE PETITION DATE AND (II) GRANTING RELATED RELIEF

Celadon Group, Inc. and its affiliated debtors (collectively, the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US), hereby submit this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) authorizing the Debtors to retain and employ Jones Lang LaSalle Brokerage, Inc. ("JLL") as real estate broker, *nunc pro tunc* to the Petition Date (as defined below) as to certain properties owned by the Debtors and (ii) granting related relief. In support of this Application, the Debtors submit the *Declaration of Brian T. Seitz in Support of Retention Application* (the "Seitz Declaration"), a copy of which is attached to this Application as **Exhibit B**, and incorporate by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celadon Group, Inc. (1050); A R Management Services, Inc. (3604); Bee Line, Inc. (5403); Celadon Canadian Holdings, Limited (2539); Celadon E-Commerce, Inc. (2711); Celadon International Corporation (5246); Celadon Logistics Services, Inc. (0834); Celadon Mexicana, S.A. de C.V. (6NL7); Celadon Realty, LLC (2559); Celadon Trucking Services, Inc. (6138); Distribution, Inc. (0488); Eagle Logistics Services Inc. (7667); Hyndman Transport Limited (3249); Jaguar Logistics, S.A. de C.V. (66D1); Leasing Servicios, S.A. de C.V. (9MUA); Osborn Transportation, Inc. (7467); Quality Companies LLC (4073); Quality Equipment Leasing, LLC (2403); Quality Insurance LLC (7248); Servicios Corporativos Jaguar, S.C. (78CA); Servicios de Transportación Jaguar, S.A. de C.V. (5R68); Stinger Logistics, Inc. (3860); Strategic Leasing, Inc. (7534); Taylor Express, Inc. (9779); Transportation Insurance Services Risk Retention Group, Inc. (7197); Vorbas, LLC (8936). The corporate headquarters and the mailing address for the Debtors listed above is 9503 East 33rd Street, One Celadon Drive, Indianapolis, IN 46235.

reference the *Declaration of Kathryn Wouters in Support of Chapter 11 Filings and First Day Pleadings* [D.I. 3] (the "First Day Declaration"). In further support of this Application, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue of these chapter 11 cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested in this Application are sections 327(a), 330, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1.

**BACKGROUND**

5. Celadon Group, Inc. and its affiliated debtors are one of the largest North American truckload freight transportation carriers, providing point-to-point shipping, and specifically, long

haul, regional, local, dedicated, intermodal, temperature-protect, and expedited freight services across the United States, Canada and Mexico. Amid industry-wide headwinds, including falling freight rates, the Debtors began to experience liquidity constraints and worked with their key stakeholders to identify a solution that would maximize enterprise value for the benefit of all stakeholders. On December 8, 2019 (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. The Debtors continue to be in possession of their assets, oversee their businesses, and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 18, 2019, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). As of the date hereof, no trustee or examiner has been appointed in the Debtors' chapter 11 cases.

7. Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, which is fully incorporated into this Motion by reference.

8. On February 4, 2020, the Court entered the *Order (I) Approving Sale Procedures for the Debtors' Remaining Assets and (II) Authorizing and Approving the Sale of Such Remaining Assets Free and Clear of Liens, Claims, Interests, and Encumbrances* [D.I. 431] (the "Remaining Assets Sale Procedures Order"). Pursuant to the Remaining Assets Sale Procedures Order, the Court approved certain streamlined procedures for the sale of the Debtors' remaining assets, including certain real property (the "Remaining Properties").

**RELIEF REQUESTED**

9. Pursuant to sections 327(a), 330, and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors respectfully request entry of an order, substantially in the form attached to this Application as **Exhibit A**, authorizing the Debtors to employ and retain JLL as real estate broker in connection with these chapter 11 cases, *nunc pro tunc* to the Petition Date, with respect to certain real estate owned by the Debtors, and certain additional real estate transactions contemplated by the Debtors in accordance with the terms of the Proposed Order and the *Services and Compensation Agreement* by and between Celadon Group, Inc., and its affiliates, and Jones Lang LaSalle Brokerage, Inc., along with such other related agreements (collectively, the "Services Agreement"), a true and correct copy of which is attached to the Proposed Order as **Exhibit 1**.

A. JLL's Qualifications

10. JLL is a nationally and internationally recognized real estate brokerage firm.

11. JLL was originally engaged in 2017 to market for sale certain real estate owned in the Applicable Markets identified in Exhibit B to the Services Agreement.

12. The Debtors, in consultation with the DIP Agent and the Committee, desire to have JLL represent the Debtors with respect to the marketing and sale of the Remaining Properties.

B. Services to be Provided

13. Pursuant to the Services Agreement, JLL has provided and has agreed to continue to provide the following services, subject to further order of the Court:

- Property disposition;
- Assess markets;
- Hold site tours;

- Prepare and distribute a Request for Proposal to short-listed sites;

- Prepare financial and qualitative analysis;

- Negotiate letters of intent;

- Negotiate purchase and sale agreements; and

- Disclose material facts.

14. Pursuant to the Services Agreement, Brian Seitz and Jake Sturman of JLL will be responsible primarily to the Debtors for the supervision, coordination, and direction of JLL's services under the Services Agreement. However, pursuant to the Services Agreement, JLL reserves the right to designate another member of the firm to act in such capacity as JLL deems necessary. Further, JLL is authorized to delegate responsibilities, as-needed, to its state and country licensed affiliates and to hire co-brokers. In such event, JLL will file, and require such co-broker to file, declarations indicating that the co-broker has reviewed the list of interested parties in these chapter 11 cases, disclosing the co-broker's relationships, if any, with the interested parties, and indicating that the co-broker is (a) disinterested, and (b) will remain disinterested during the time that the co-broker works with JLL to provide services to the Debtors in connection with these chapter 11 cases.

C. Professional Compensation and Expense Reimbursement

15. JLL's decision to enter into the Services Agreement and provide real estate brokerage services to the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, including its standard compensation structure and reimbursement of out-of-pocket expenses incurred in accordance with its customary billing practices.

16. JLL's compensation structure is broken down into two categories, commissions and rebates. In terms of commissions, pursuant to the Services Agreement, subject to exceptions, JLL will be entitled to receive a commission if the Debtors execute an agreement for the sale of property either: (i) during the term of the Services Agreement, or (ii) under certain circumstances, within twelve months thereafter. The commission to be paid to JLL shall be determined in accordance with the negotiated market rate for the area. Such commission is conditioned upon the closing of the property pursuant to a purchase agreement (a "Disposition").

17. As to rebates, pursuant to the Services Agreement, JLL has agreed to rebate back to the Debtors any commissions earned on acquisitions based on the following annual amounts of commissions earned by JLL:

- $0 - $150,000 – 0% rebate to Debtors
- $150,001 - $250,000 – 10% rebate to Debtors
- $250,001 - $500,000 – 25% rebate to Debtors
- $500,001 and above – 35% rebate to Debtors

18. The Debtors submit that the foregoing compensation structure is standard in the industry and reasonable under the circumstances.

19. It is standard in JLL's industry for professionals providing commercial real estate brokerage services to be compensated on a fixed fee or commission basis, rather than on any incremental hourly basis, for such services. Accordingly, JLL and the Debtors have agreed that, consistent with industry practice, JLL will be compensated in accordance with the above compensation structure. In connection therewith, the Debtors submit that cause exists for this Court to waive the information requirements imposed by Local Rule 2016-2(d) and (h). Specifically, the Debtors respectfully request that, in lieu of requiring JLL to submit monthly, interim, or final fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, a

modified procedure, as set forth below, be established to compensate JLL (the "Compensation Procedures):

- (a) Upon the occurrence of a Disposition, JLL and the Debtors will prepare a notice (a "Notice of Disposition") to be filed and served upon the U.S. Trustee, counsel to the Committee, the Debtors' lenders, any party that has requested notice pursuant to Bankruptcy Rule 2002, and any other party whose rights are affected by such occurrence;

- (b) Any such Notice of Disposition will specify the Remaining Property in question, the sale price, and the calculated commission for JLL and any previously-identified co-broker;

- (c) Such Notice of Disposition will provide that parties in interest may object to such commission for JLL for a period of the shorter of ten (10) calendar days after the filing and serve of the Notice of Disposition or the applicable closing date (the "Objection Deadline"). Upon the expiration of the Objection Deadline, all parties in interest shall be barred from contesting the Debtors' payment of such commission to JLL or any previously-identified co-broker; and

- (d) Immediately following the expiration of the Objection Deadline, the Debtors shall be authorized to pay to JLL and any previously identified co-broker the commission(s) set forth in the Notice of Disposition, without further order of the Court.

- (e) Notwithstanding the foregoing, any commission(s) paid to JLL and any previously identified co-broker shall be subject to any future order of the Court disallowing or reducing such payment for cause.

20. For the avoidance of doubt, pursuant to the *Order (I) Authorizing the Private Sale of Certain Nonresidential Real Property Located in York, Pennsylvania Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Authorizing the Seller to Assume and Assign Certain Executory Contracts, and (III) Granting Other Related Relief [York Private Sale]* [D.I. 415], JLL will earn a commission upon the closing of the sale (the "Closing") of the real property located in York, Pennsylvania. Accordingly, upon entry of the Proposed Order and the Closing, JLL and the Debtors will prepare and file a Notice of Disposition with respect to such sale.

21. Based on JLL's industry practices and the circumstances of these chapter 11 cases, the Debtors submit that the Compensation Procedures are reasonable and are in the best interests of the Debtors, their estates, JLL, and other parties in interest.

D. **The Compensation Procedures are Appropriate and Reasonable and should be Approved Under Section 327 of the Bankruptcy Code**

22. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval, "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title." 11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

23. The Debtors respectfully submit that the retention and employment of JLL as real estate broker in connection with these chapter 11 cases is permitted by section 327(a) of the Bankruptcy Code, and this Application meets the requirements of Bankruptcy Rule 2014. Such retention and employment is reasonable under the circumstances and is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

E. **JLL's Disinterestedness**

24. To the best of the Debtors' knowledge, JLL (i) does not hold any interest materially adverse to the Debtors' estates; (ii) has no connection with the Debtors, their creditors, equity

security holders, any other party in interest, or related parties herein; and (iii) is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, except as may be set forth in the Seitz Declaration.

25. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of JLL's retention are discovered or arise, JLL will use reasonable efforts to promptly file a supplemental declaration.

F. Indemnification and Other Relevant Provisions

26. The Services Agreement contains the following language regarding indemnification:

> Owner will indemnify, defend and hold Agent, its directors, officers, agents, servants and employees harmless from and against any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including attorneys' fees and court costs, arising out of claims, demands, or causes of action by third parties to which Agent may become liable or subject in connection with the performance of nonperformance of Agent's duties and activities within the scope of this Agreement or arising out of Agent's negligence or willful misconduct. Agent shall indemnify, defend and hold Owner harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including reasonable attorney's fees and court costs arising out of claims, demands or causes of action by third parties (except to the extent covered by any liability insurance required to be maintained by Owner with respect to the Property (without regard to any deductible or self-insurance retention amounts), sustained or incurred by or asserted against Owner by reason of or arising out of Agent's negligence or willful misconduct.

Services Agreement, Section 7.

27. The Debtors and JLL believe that the indemnification provisions contained in the Services Agreement, as may be amended by the Proposed Order, are customary and reasonable for

JLL and comparable firms providing real estate brokerage services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district and others. Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and JLL at arm's length and in good faith.

28. In addition, the Services Agreement permits JLL to receive a commission with respect to certain real estate transactions that are contracted for within 12 months after the expiration or termination of the Agreement so long as:

> Prior to such expiration or termination, Jones Lang LaSalle has (i) contacted the landlord, owner or developer of the relevant party or the agent of any such party regarding the possibility of a purchase agreement or other transaction with Principal; (ii) has informed Principal of the availability of the property as an alternative (such locations referred to below as "Protected Locations"); (iii) Principal has approved the Protected Location in writing; and (iv) Jones Lang LaSalle and Principal have begun written negotiations of a LOI with the owner of said Protected Locations.

29. The Services Agreement also references JLL's standard exclusive listing agreement (the "ELA") which is attached to the Services Agreement as Exhibit A. As contemplated by the Services Agreement, in connection with the Debtors' retention of JLL, the Debtors will execute an ELA for each property. Among its provisions, the ELA references the prospect of JLL's professionals serving as agents for a potential purchaser of one or more of the Debtors' Properties. This provision, often referred to as a "Dual Agency Provision" is standard in commercial real estate listing agreements and encourages full participation in the marketplace, avoiding the exclusion of JLL's clients from among potential purchasers. Notwithstanding the terms of the ELA, JLL will ensure that the members of the Listing Team (as defined therein) will not provide any services to any prospective purchaser with respect to the Debtors' Properties and will not share confidential information relating to the Debtors' Properties with any JLL professional that is

providing such services. Furthermore, JLL will provide prior written notice to the Debtors of any prospective purchaser represented by JLL's other professionals.

30. Each of these provisions contained in the Services Agreement (and the ELA), viewed in conjunction with the other terms of JLL's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require JLL's services to assist in the sale of the Debtors' real property and additional real estate transaction opportunities. Accordingly, as part of this Application, the Debtors request that this Court approve these provisions of the Services Agreement and ELA, as may be amended by the Proposed Order (setting forth the foregoing limitations).

## *NUNC PRO TUNC* RELIEF IS APPROPRIATE

31. Pursuant to the Services Agreement, JLL has provided real estate brokerage services to the Debtors since the Petition Date. In connection therewith, JLL performed services prepetition with assurances that the Debtors would seek approval of its employment and retention *nunc pro tunc* to the Petition Date. The Debtors submit that no party in interest will be prejudiced by the grant of *nunc pro tunc* relief, as JLL has provided and continues to provide valuable brokerage services to the Debtors and their estates.

## NOTICE

32. Notice of this Application will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) counsel to the Committee; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) Schulte Roth & Zabel LLP and Landis Rath & Cobb LLP, counsel to Blue Torch Finance, LLC; (vii) King & Spalding LLP, counsel to Luminus Energy Partners Master Fund, Ltd.; (viii) Goldberg Kohn Ltd. and Morris, Nichols, Arsht & Tunnell LLP, counsel to MidCap Funding

IV Trust; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (x) any other party in interest entitled to notice of this Motion. Due to the nature of the relief requested in this Application, the Debtors respectfully submit that no further notice of this Application is required.

## NO PRIOR REQUEST

33. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, attached hereto as **Exhibit A**, granting the relief requested in this Application, and grant such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: February 26, 2020<br>Wilmington, Delaware | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Stuart M. Brown*<br>Stuart M. Brown (DE 4050)<br>Matthew S. Sarna (DE 6578)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 394-2341<br>Email: stuart.brown@us.dlapiper.com<br>　　　　matthew.sarna@us.dlapiper.com<br><br>-and-<br><br>Richard A. Chesley (admitted *pro hac vice*)<br>Jamila Justine Willis (admitted *pro hac vice*)<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 335-4500<br>Facsimile: (212) 335-4501<br>Email: richard.chesley@us.dlapiper.com<br>　　　　jamila.willis@us.dlapiper.com<br><br><br>*Counsel to the Debtors* |